PER CURIAM.
We have for review a referee’s report recommending that Respondent R. Patrick Mirk be found guilty of professional misconduct and disbarred. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons discussed herein, we approve the referee’s findings of fact and recommendations of guilt, as well as the referee’s recommended discipline. Accordingly, we disbar Mirk from the practice of law in Florida.
BACKGROUND
The Bar filed a two-count complaint against Mirk, alleging that he violated several of the Rules Regulating the Florida Bar (Bar Rules). A referee was appointed. After holding a hearing, the referee has submitted his report for the Court’s *1182 review, in which he makes the following findings and recommendations.
Count I. Lome Lyles retained Patrick Mirk to represent him in a dispute with a contractor concerning a residential construction project. Lyles agreed to pay Mirk $250 per hour for his work on the case. He also made an initial payment to Mirk, totaling $750. Mirk did not inform Lyles that the $750 payment would be treated as a “non-refundable retainer.” Nonetheless, Mirk deposited Lyles’ $750 check into his operating account, rather than in his trust account as is required under the Bar Rules.[1]
Given these facts, the referee found clear and convincing evidence that Lyles’ $750 payment was an advance payment for legal fees, and was not a non-refundable retainer. Absent an agreement that the $750 would be treated as a non-refundable retainer, Mirk was obligated to hold the advance fee payment in trust until earned. The referee found that by failing to deposit Lyles’ advance payment into his trust account, Mirk failed to apply trust funds for the intended purpose. For this misconduct, the referee recommended that Mirk be found guilty of violating the following Bar Rules: 5 — 1.1(a) (a lawyer shall hold in trust, separate from the lawyer’s own property, any property of clients or third persons that are in a lawyer’s possession in connection with a representation); and 5-1.1(b) (money or other property entrusted to an attorney for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose). The referee has also recommended that Mirk be found guilty of violating 4-8.4(g) (a lawyer shall not fail to respond to an official inquiry made by bar counsel or a disciplinary agency).
Count II. During the course of his practice, Mirk developed a professional relationship with Frank Bragano. Mirk represented Bragano and the business entities with which Bragano was involved in various projects over a number of years. Two such projects are at issue in this case.
First, Bragano hired Mirk to help resolve a dispute with Bragano’s former attorney concerning an investment deal known as the “Meridian Project.” Mirk was successful in negotiating a resolution to the dispute. As a result of the settlement, Mirk received a check for $100,462.50, to be distributed equally to each of the investors in the Meridian Project. Mirk deposited the check into his trust account. On June 30, 2004, Mirk wrote a check to Bragano for $31,487.50, representing his share of the settlement. At that time, Bragano placed the check in a desk drawer and it was not cashed.
As to the second project, in June 2004 Mirk began discussions with Bragano and others about plans to establish a large multi-million dollar “investment platform.” Mirk would serve as corporate counsel for the venture. The project was intended to include four separate limited liability corporations; the first of these corporations to be established was called Montpelier, LLC.
The primary dispute in this case concerns Mirk’s compensation for his work on the Montpelier venture. Mirk testified that he and Bragano had an oral agreement that Mirk would be paid a $40,000 flat fee for each company he established and $100,000 per year to act as corporate counsel. In contrast, Bragano testified be *1183 fore the referee that he did not agree to any type of flat fee arrangement. Instead, Bragano maintained that Mirk agreed to be paid a portion of the future profits from the investment venture in the event it was ultimately successful. On this central point, the referee found Bragano’s testimony to be credible and that Mirk’s testimony was not credible. Indeed, based on the evidence, the referee found that Mirk did not have an agreement to be paid a $40,000 flat fee for his work on the Montpelier project.
In October 2004, Bragano informed Mirk for the first time that he had not cashed the Meridian Project check for $31,487.50. Within a short time thereafter, Mirk executed a stop payment on that check without advising Bragano; bank records submitted into evidence show the stop payment was issued October 25, 2004. At this point, Mirk began a series of transactions disbursing the Meridian Project funds represented in the check for which Mirk had issued the stop payment order to himself. First, on October 25, 2004, the date the stop payment was entered, Mirk wrote a check to himself for $10,000. Next, Mirk issued three checks, each for $2,000, on November 10, November 12, and November 15, 2004, payable to himself. On November 22, 2004, Mirk wrote a check payable to the United States Treasury in the amount of $7,068.14. On November 24, 2004, he wrote a check to himself for $1,931.86, and on December 13, 2004, he wrote another check for $4500. Mirk later disbursed the remainder of the Meridian Project funds to himself on April 11, 2005. The referee found that Bragano had no knowledge of these disbursements and did not authorize them. In fact, the referee found that Mirk intentionally concealed these distributions from his client.
In December 2004, Bragano called Mirk to inform him that he was planning to cash the Meridian Project check to loan the money to a friend. The following day, December 20, 2004, Mirk sent Bragano a letter informing him for the first time that he had stopped payment on the check. In the letter, Mirk explained that he distributed and applied the Meridian Project funds, among other things, toward the $40,000 claim he asserted he was owed for his work on the Montpelier project and the other limited liability corporations involved in the investment platform, as well as toward the $100,000 he argued he was owed as corporate counsel.
Upon receiving the letter of December 20, Bragano was furious with Mirk. However, his business partners urged Bragano to take no action at the time to protect their investment venture. In June 2005, the Montpelier project came to an unsuccessful end. At that time, Bragano hired a new attorney to secure the return of the Meridian Project funds. On August 11, 2005, new counsel held a meeting with Mirk to discuss the matter. Notably, the referee found that Mirk did not produce any invoices or billing statements at this meeting to support his claim that he was owed $40,000 for his work on Montpelier. Thus, the referee found that the parties did not resolve their dispute at the August 2005 meeting. Ultimately, Mirk never returned the $31,487.50 he had withdrawn from Bragano’s trust funds, and in June 2006 Bragano filed a complaint with the Bar.
Given the conduct described, the referee found:
The clear and convincing evidence shows ■that Respondent did not have an agreement to be paid a $40,000 flat fee for work done in relation to Montpelier. Although it is not necessary to have a written fee agreement in this instance, the clear and convincing evidence is that Respondent did not have a written fee *1184 agreement or a verbal fee agreement for a $40,000 flat fee for work performed on Montpelier.
The evidence cited by Respondent to support the alleged flat fee agreement is not persuasive and is directly contradicted by the record. Respondent’s claim of an agreement for a $40,000 flat fee is flatly contradicted by Bragano and further undermined by the testimony of Bragano’s partner Lynch, and attorney Ricardo Roig. Respondent’s evidence consists of his own testimony, handwritten notes he claims to have made contemporaneously, or letters he wrote after the fact.
The referee recommended that Mirk be found guilty of violating Bar Rules 5-1.1(a) (a lawyer shall hold in trust, separate from the lawyer’s own property, property of clients or third persons that are in a lawyer’s possession in connection with a representation); 5-1.1(b) (money or other property entrusted to an attorney for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose); 5-1.1(e) (upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person); and 5-1.2(g) (failure of a member to timely produce trust accounting records shall be considered as a matter of contempt).[2]
The referee found several aggravating factors: (1) prior disciplinary offenses;[3] (2) dishonest or selfish motive; (3) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;[4] (4) substantial experience in the practice of law; and (5) indifference toward making restitution. The referee also found one mitigating factor: (1) favorable reputation for character and professional skill.
As to the disciplinary sanction, the referee considered the Florida Standards for Imposing Lawyer Sanctions and case law, together with the aggravating and mitigating factors, and has recommended that Mirk be disbarred from the practice of law in Florida. The referee also awarded *1185 costs to the Bar in the amount of $11,504.95.
Mirk has filed a petition for review in this case, raising a number of challenges to the referee’s report. We approve the referee’s findings of fact and his recommendations of guilt without further discussion. The findings are supported by competent evidence and those findings support the recommended finding of guilt. Mirk also challenges the referee’s recommended discipline. He urges the Court to disapprove the referee’s recommendation for disbarment. However, as discussed below, we conclude that the referee’s recommended sanction based on the findings is supported in the Standards and case law.
ANALYSIS
In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
The referee’s findings of fact demonstrate that Mirk misappropriated $31,487.50 in client funds held in his trust account. This Court has long held that attorney misconduct involving the misuse or misappropriation of client funds is unquestionably one of the most serious offenses a lawyer can commit. See Fla. Bar. v. Martinez-Genova, 959 So.2d 241, 246 (Fla.2007). Indeed, disbarment is presumed the appropriate discipline when an attorney engages in this type of misconduct. Id.; see also Fla. Bar v. Valentine-Miller, 974 So.2d 333, 338 (Fla.2008) (holding that disbarment is the presumptively appropriate sanction, under both the Florida Standards for Imposing Lawyer Sanctions and case law, when a lawyer misappropriates trust funds). We have also emphasized that the presumption of disbarment is exceptionally weighty when the attorney’s misuse is intentional rather than a result of neglect or inadvertence. See Fla. Bar v. Travis, 765 So.2d 689, 691 (Fla.2000).
In defense of his actions in this case, Mirk asserts that he was owed a $40,000 flat fee for his work on Montpelier and each of the other limited liability corporations he planned to establish for the investment platform. Thus, he contends that he was entitled to retain the Meridian Project funds held in trust as payment toward Bragano’s debt. We disagree. At the outset, we note that Mirk’s compensation arrangement was never reduced to writing. When a lawyer fails to place an agreement for representation in writing, he or she is always at risk of becoming involved in a fee dispute with the client. In situations such as the instant case, absent a written agreement, the referee is required to consider all evidence and weigh the parties’ testimony at the disciplinary hearing and evaluate credibility. We have long held that because the referee is in the best position to judge the credibility of the witnesses, we defer to the referee’s assessment and his resolution of the conflicting testimony. See Fla. Bar v. Batista, 846 So.2d 479, 483 (Fla.2003).
Moreover, the facts here demonstrate that Mirk made a number of secret withdrawals from his client trust account without his chent’s knowledge or permission. When lawyers do face disputes over fees with their clients, the Bar Rules certainly do not permit attorneys to resolve *1186 such disputes in this manner. There is never a valid reason for misappropriating client funds held in trust. See Fla. Bar v. Valentine-Miller, 974 So.2d at 338. Once again, we emphasize to the members of the Bar that an attorney is never permitted to withdraw or otherwise use client funds held in trust except as specifically authorized under the Bar Rules. To engage in such conduct, a lawyer risks full disciplinary sanctions under the Rules Regulating the Florida Bar, including disbarment.
As we have stated, disbarment is presumed the appropriate discipline when an attorney misappropriates client money held in trust and Mirk simply has not presented any arguments to rebut the presumption in this case. The Florida Standards for Imposing Lawyer Sanctions applicable to Mirk’s misconduct state that disbarment is the appropriate sanction. See Fla. Stds. Imposing Law. Sanes. 4.11 (“Disbarment is appropriate when a lawyer intentionally or knowingly converts client property regardless of injury or potential injury.”); Fla. Stds. Imposing Law. Sanes. 4.61 (“Disbarment is appropriate when a lawyer knowingly or intentionally deceives a client with the intent to benefit the lawyer or another regardless of injury or potential injury to the client.”).
Additionally, this Court has previously imposed disbarment for violations of the ethical rules similar to those found in this case. See Fla. Bar v. Brownstein, 953 So.2d 502 (Fla.2007) (disbarring respondent who misappropriated $20,000 in client funds held in trust, a portion of the total amount entrusted to the respondent by the client for the purpose of paying a bankruptcy settlement); see also Fla. Bar v. Barley, 831 So.2d 163 (Fla.2002) (disbarring respondent who misappropriated $76,760.68 in client funds held in trust, making a series of withdrawals from the funds over a period of three months, and ultimately depleting the entire amount).
In sum, after considering the referee’s factual ’ findings, the rules violated, the Standards, and the case law, we approve the referee’s recommendation of disbarment as the appropriate sanction.
CONCLUSION
Accordingly, we approve the referee’s findings of fact, recommendations of guilt, recommended sanction, and award of costs. R. Patrick Mirk is hereby disbarred. The disbarment will be effective thirty days from the filing of this opinion so that Mirk can close out his practice and protect the interests of existing clients. If Mirk notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Mirk shall fully comply with Rule Regulating the Florida Bar 3-5.1(g). Further, Mirk shall accept no new business from the date this opinion.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from R. Patrick Mirk in the amount of $11,504.95, for which sum let execution issue.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.

. The referee found that Mirk earned some, but not all, of the $750 fee advance. Lyles eventually became dissatisfied with Mirk’s representation and demanded a refund of the $750 payment. The referee found that Mirk did issue the refund.

. Concerning the violation of rule 5-1.2(g), the referee’s report in this case appears to contain a scrivener’s error which indicates that Mirk is guilty of violating Bar Rule 5-1.1(g) (pertaining to interest on attorney trust accounts). However, based on the record before us, it is apparent that the referee intended to find Mirk in violation of rule 5-1.2(g).

. The referee found that Mirk received an admonishment for minor misconduct in 2003 for failing to timely communicate with his client regarding a post-judgment collection matter involving funds deposited into his trust account. The matter was eventually resolved and Respondent provided the client with the promised financial document.

. The referee found that on October 13, 2006, the Bar sent a letter to Mirk requesting that he provide his trust account records for its review. Mirk objected to the Bar’s request and refused to provide the records. The Bar then served Mirk with a subpoena, directing him to produce his trust account records. Mirk again failed to comply. Accordingly, in February 2007, a Florida Bar grievance committee entered a finding of non-compliance, and the Bar filed a petition for contempt in this Court. See Fla. Bar v. Mirk, No. SC07-394 (petition filed Mar. 1, 2007). On March 7, 2007, we issued an order directing Mirk to show cause why he should not be held in contempt of Court and suspended until he complied with the subpoena. Ultimately, we determined that Mirk did not show cause and, on May 14, 2007, we entered an order suspending him from the practice of law. See Fla. Bar v. Mirk, 958 So.2d 921 (Fla.2007) (table). Several months later, the Bar filed a "Certificate of Compliance with Subpoena Duces Tecum” and, on September 19, 2007, Mirk was reinstated. See Fla. Bar v. Mirk, 967 So.2d 199 (Fla.2007) (table).