PER CURIAM.
We have for review the referee’s reports recommending that Respondent Clint Johnson be found guilty of professional misconduct and disciplined. We have jurisdiction. See art. V, § 15, Fla. Const. Previously, in case number SC11-622, Respondent Johnson was suspended on an emergency basis due to trust account irregularities and shortages discovered after his bank sent a trust account overdraft report to the Bar. The three cases involved here are the formal complaint filed against Johnson after the emergency suspension was entered (case number SCI 1-1136) and two contempt proceedings against Johnson (case numbers SC11-1578 and SC11-2343).[1]
BACKGROUND
SC11-1136: On June 10, 2011, the Bar filed a formal complaint[2] against Johnson based on the underlying allegations of misconduct for which he had been suspended on an emergency basis in case number SC11-622. The referee in this case submitted his report and recommendation making extensive findings of fact detailing the rather complicated circumstances of this case.
At the time of the events involved in this case, Johnson was the principal of the Johnson Law Group and also the principal of several debt management companies, including Debt Wave, Consumer Business Debt Counseling, and Enhanced Servicing Solutions. Each of the debt management companies had at least one trust account and an operating account. Johnson Law Group also had a trust account and an operating account. In May 2010, the Bar received an overdraft report for the Johnson Law Group trust account (the 4380 *34 account) that triggered its investigation. This report reflected that personal injury settlement checks written to two of Johnson’s clients had been returned for insufficient funds. The clients were paid their funds the following day when the checks were re-presented.
At the final hearing, the Bar’s Chief Auditor, Clark Pearson, testified that his investigation of the 4380 account showed irregularities during the audit period, from January 2009 to November 2010, including account shortages, negative balances, improper transfers into and out of the account and a lack of required documentation showing regular trust account reconciliations and comparisons.[3] Pearson testified that Johnson had misappropriated client funds by taking fees before the corresponding deposit and taking an earned fee more than once from the same client. The referee concluded, however, that the testimony concerning actual misappropriations, was conflicting in that Johnson presented the testimony of Pedro Pizzaro, a CPA and former auditor for the Bar, who found fewer actual shortages in the account than Pearson had. The referee also noted that both parties agreed that only two client checks were ever returned for insufficient funds, both on the same date and both had been promptly redeposited and paid. The referee essentially concluded that although there were irregularities and shortages in the account, Johnson had not stolen any money. Rather, as testified by Pizzaro, the shortages and irregularities were the result of bookkeeping and accounting errors made by Johnson’s trusted and longstanding bookkeeper, Deanna Cintron, in order to cover up her theft of funds from Johnson’s operating account[4] and poor performance as a bookkeeper. The referee credited Cin-tron’s and Johnson’s testimony that Johnson was unaware of Cintron’s activities and the shortages and irregularities in the trust account until July 5, 2010, when Cin-tron first informed Johnson of the overdraft report and the Bar’s investigation. The referee found that over time, Johnson had allowed Cintron to handle the trust accounts with little supervision and with complete autonomy. Johnson acknowledged his responsibility for the proper operation and management of his trust accounts and his failure to continually and directly supervise the management of those accounts.
From July 2010 through November 2012, Johnson assembled his financial records and tried to recreate accurate records of the many transactions in his many accounts. By December 2010, with the help of two accountants, a new bookkeeper, and Pizzaro, he had properly balanced and reconciled the trust account. In April 2011, *35 Johnson was suspended. Although he ceased practicing law, he continued to pay his employees from savings and family loans to assist in the transfer of client files. With the help of Roger D. Moss, Esq., of the Zimmerman, Kiser, Sutcliff law firm in Orlando, he transferred his debt clients to Consumer Alliance Processing Corporation and Consumer Attorney Services. He duly advised these firms that he was suspended, and those firms agreed to cover the nearly $60,000 cost of mailing notices to clients via certified mail.
Johnson also acknowledged that he is the subject of several out of state investigations for failing to obtain authorization in those states for debt management services. He is contesting some, stipulating to others and facing penalties and fines. He stopped accepting debt management clients in early 2010. Walter Tuller, Staff Investigator for the Bar, testified that he spoke with the Attorney General’s Offices in Florida, Georgia, South Carolina, and Colorado regarding the debt management practices of the Johnson Law Group. Tul-ler received copies of court documents in each of these states indicating that the law firm was not in compliance with that state’s registration requirements regarding debt management services, was required to refund funds to some consumers in South Carolina, Georgia, and Florida, and was the subject of a law suit in Colorado regarding these same issues.
SC11-1578: On August 15, 2011, the Bar filed a petition for contempt and order to show cause against Johnson alleging that he violated the terms of the emergency suspension order entered in SC11-622. The petition and a second petition for contempt, discussed below, were referred to a referee. After a hearing, the referee found that Johnson violated the terms of the emergency suspension order by (1) holding himself out as an attorney and continuing to represent three clients after the suspension took effect; (2) failing to notify his debt management clients of his suspension and failing to provide those clients with a copy of the suspension order; (3) providing the Bar with an affidavit that falsely stated that he notified all clients of his suspension; and (4) continuing to withdraw and disburse funds from certain trust accounts after the effective date of the emergency suspension.
SC11-2343: On December 12, 2011, the Bar filed a second petition for contempt and order to show cause against Johnson alleging that he violated the Court’s order granting the parties’ stipulation for appointment of a receiver.[5] The petition alleged that Johnson had failed to retain the services of the receiver, despite having stipulated that he would be responsible for all costs associated with the appointment of the receiver and despite having access to funds which should have been used for this purpose. Johnson filed a response on December 30, 2011, acknowledging that he had not retained the appointed receiver, but alleging essentially that he could not afford to do so because all of his operating and trust accounts were frozen. As noted, the petition for contempt was referred to a referee. The referee found that Johnson knowingly and willfully violated the order by failing to retain the services of the receiver.
*36 In case number SCI 1-1136, the referee has recommended that Johnson be found guilty of violating rules 4-1.15 (Compliance with Trust Accounting Rules); 5-l.l(a)(l) (Trust Account Required, Comingling Prohibited); 5-l.l(b) (Application of Trust Funds or Property to Specific Purpose); 5-1.2(a), (b), (c) and (d) (Trust Accounting Records and Procedures); and 4-5.3(b)(2) (Responsibility Regarding Non-Lawyer Assistants) in relation to the trust account irregularities and shortages, failure to keep proper trust account records, and failure to supervise an employee who stole money from the firm and mismanaged the trust accounts. The referee has recommended that Johnson be suspended for six months in this case, nunc pro tunc, to the effective date of the emergency suspension, followed by a year’s probation. In case numbers SCI1-1578 and SCI1-2343, the referee has recommended that Johnson be found in contempt of the emergency suspension order in case number SC11-622 and the Court’s later order appointing a receiver in case number SC11-1136. As a sanction, the referee recommends an additional year’s suspension with a year of probation.
The Bar has sought review of the referee’s recommendation that Johnson be found not guilty of violating rule 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation) in case number SC11-1136, the referee’s failure to find certain aggravating factors in case number SC11-1136, and the referee’s recommendations as to discipline in all three cases. As discussed in more detail below, we approve the referee’s findings of fact and recommendations of guilt in all three cases, but disapprove the recommended discipline and disbar Johnson as an overall sanction.
ANALYSIS
The Bar challenges the referee’s recommendation that Johnson be found not guilty of violating rule 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). Specifically, the Bar challenges the referee’s finding that Johnson lacked the necessary element of intent to support a violation of this rule. See Fla. Bar v. Lanford, 691 So.2d 480, 481 (Fla.1997) (stating that in order to establish a violation of rule 4 — 8.4(c), the Bar must prove the necessary element of intent).
The Court has explained that intent under this rule is proven by establishing that “the [attorney] deliberately or knowingly engaged in the activity in question.” Fla. Bar v. Berthiaume, 78 So.3d 503, 510, n. 2 (Fla.2011); Fla. Bar v. Barley, 831 So.2d 163, 169 (Fla.2002) (same). The Bar contends that the referee’s factual findings and the evidence in this case show that Johnson deliberately and knowingly delegated responsibility to Cintron, deliberately and knowingly failed to adequately supervise her, and deliberately and knowingly failed to keep proper trust account records, and that such conduct is sufficient to establish intentional misappropriation of funds by Johnson. The Bar relies on Florida Bar v. Riggs, 944 So.2d 167 (Fla.2006), in support of this argument. In Riggs, the referee recommended that the attorney be found guilty of violating rule 4-1.3, rule 4-8.4(c), and several trust accounting rules. The referee found that there had been significant shortages in Riggs’ trust account, that he paid personal expenses from his trust accounts, that he improperly commingled attorney and client funds, and that he had prohibited overdraft protection on his trust account. Although Riggs testified that the shortages in his trust account were due to theft by an employee and an overpayment in a real estate closing, the referee did not find that the employee was responsible for the missing funds and *37 concluded that Riggs had inadequately supervised the employee and failed to properly maintain his trust account. Id. at 170.
On review, Riggs argued that he should not be found guilty of violating rule 4-8.4(c) because the shortage in the trust account was caused by employee theft and his failure to adequately supervise that employee was unintentional conduct. Id. The Court rejected this argument, specifically noting that there were no factual findings by the referee that the employee had stolen the funds. Under these circumstances, the Court reasoned that Riggs’ failure to supervise his employee and his sloppy bookkeeping amounted to intent under rule 4-8.4(c). Id. at 171.
Here, the referee found that Johnson delegated significant responsibilities with regard to his trust account to Cintron and failed to supervise her-extremely negligent conduct. However, the referee’s factual findings also reflect that Cintron stole from Johnson’s operating account and mismanaged the trust account, resulting in shortages and premature payments of client funds and attorney fees. The referee found that Johnson did not participate in Cintron’s activities and that they were conducted without Johnson’s knowledge. Given these factual findings, we conclude that Johnson’s deliberate and knowing actions in delegating responsibilities to Cin-tron and then failing to properly supervise her is insufficient under these specific circumstances to prove intent to misappropriate client funds in violation of rule 4-8.4(c).
The Bar next challenges the referee’s findings as to mitigating and aggravating circumstances. The referee found the following mitigating circumstances: (1) absence of prior disciplinary record; (2) absence of dishonest or selfish motive; (3) timely good faith effort to make restitution or to rectify consequences of misconduct; (4) full and free disclosure to the disciplinary board or cooperative attitude toward proceedings; (5) inexperience in the practice of law; (6) character or reputation; (7) interim rehabilitation; (8) imposition of other penalties or sanctions; and (9) remorse. The Bar challenges the referee’s findings of absence of dishonest or selfish motive and full and free disclosure or cooperative attitude toward proceedings and contends that the referee should have found the aggravating factors of dishonest or selfish motive and bad faith obstruction of the disciplinary process. “Like other factual findings, a referee’s findings of mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record. A referee’s failure to find that an aggravating factor or mitigating factor applies is due the same deference.” Fla. Bar v. Germain, 957 So.2d 613, 621 (Fla.2007) (citation omitted).
The Bar has not shown that the facts underlying the referee’s mitigation findings are clearly erroneous or not supported by the record. Rather, it points to other facts in the record that it contends should outweigh those relied upon by the referee. This does not meet the Bar’s burden in attempting to overturn the referee’s factual findings. Fla. Bar v. Head, 27 So.3d 1, 7 (Fla.2010) (stating that the burden in challenging a referee’s factual findings “cannot be met merely by pointing to contradictory evidence when there is substantial competent evidence in the record supporting the referee’s findings”); see also Fla. Bar v. Glueck, 985 So.2d 1052, 1056 (Fla.2008) (same).
The Bar argues that Johnson’s continued disbursements after the emergency suspension, his failure to timely notify his debt clients, his failure to promptly comply with the Bar’s subpoena regarding trust documents, and the fact that the Bar’s *38 investigator discovered the issues Johnson was having in other states regarding his debt management business, rather than Johnson initially disclosing this to the Bar, show a selfish or dishonest motive and lack of cooperation on Johnson’s part. However, the referee found that Johnson lacked a dishonest or selfish motive based on his finding that Johnson lacked any intent to misappropriate client funds. Further, the referee also found that Johnson’s disbursement of funds was not to benefit himself but rather to protect his debt management clients and that all disbursements went for such purpose. The referee also specifically found that although Johnson did not initially provide complete trust account records to the Bar, this was because Johnson did not have them. The referee essentially found that Johnson did the best he could to cooperate with the Bar and took the necessary steps to recreate his trust records and get his accounts into compliance with the rules. With regard to Johnson’s failure to notify his debt management clients of his suspension, the referee actually found this to be a significant aggravating factor. Thus, the Bar’s arguments as to that issue are essentially moot.
Because the Bar has not shown that the referee’s factual mitigation findings are clearly erroneous or without evidentiary support, we reject the Bar’s arguments on this issue and approve the referee’s findings with regard to mitigation and aggravation.
Finally, the Bar challenges the referee’s recommended discipline in these three cases. The standard of review applicable to the referee’s recommended discipline is as follows:
In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is the Court’s responsibility to order the appropriate sanction. However, generally speaking, this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions.
Fla. Bar v. Irish, 48 So.3d 767, 774 (Fla.2010) (citations omitted). The referee recommended that Johnson be suspended for six months, nunc pro tunc, to the effective date of the emergency suspension in case number SCI 1-1136 and that he be suspended for an additional year in the contempt cases, case numbers SC11-1578 and SC11-2343. The Bar argues that at least a three-year suspension is warranted in case number SC11-1136 and that disbarment is warranted in case numbers SC11-1578 and SC11-2343.
The case law clearly supports at least a lengthy rehabilitative suspension in SC11-1136.[6] The Court has repeatedly stated that misuse or misappropriation of funds held in trust is one of the most serious offenses a lawyer can commit and that disbarment is the presumptively appropriate sanction. See Fla. Bar v. Mirk, 64 So.3d 1180, 1185 (Fla.2011); Fla. Bar v. Martinez-Genova, 959 So.2d 241, 246 (Fla.2007). The Court has also recognized that the presumption of disbarment is especially weighty when the misconduct is intentional rather than negligent or inadvertent. See Mirk, 64 So.3d at 1185; Fla. Bar v. Travis, 765 So.2d 689, 691 (Fla.2000); see also Martinez-Genova, 959 So.2d at 246 (disbarring attorney for pattern of receiving third-party funds and improperly dis *39 bursing them to herself and her client over a three-month period of time; attorney also was arrested several times for drug possession and was incarcerated after last arrest until she was transferred to a drug treatment facility); Fla. Bar v. Gross, 896 So.2d 742, 747 (Fla.2005) (disbarring attorney for twelve separate counts of trust account misappropriations, failure to defend a ehent in a lawsuit, forgery of a judge’s signature on orders, forgery of a client’s signature on a plea of guilt, and forgery of client’s signature on a check); Barley, 831 So.2d at 171 (disbarring attorney who engaged in pattern, over several months, of improperly withdrawing trust funds after manipulating client into leaving funds in attorney’s control; attorney had prior 60-day suspension for similar misconduct); Fla. Bar v. Tillman, 682 So.2d 542, 543 (Fla.1996) (disbarring attorney who engaged in pattern of intentional misuse of trust funds by paying personal expenses from the trust fund, drawing excessive and premature fees and costs, and failing to pay client medical expenses with funds given to her to do so; attorney also commingled personal and client funds and failed to follow rules for trust accounting); Fla. Bar v. Weinstein, 635 So.2d 21, 22 (Fla.1994) (disbarring attorney who had a number of significant shortages over a five-month period in his trust account caused by intentional misappropriations of client funds, failed to promptly remit client funds to clients and third parties, commingled funds, and failed to maintain minimum required trust account records 'and follow minimum required trust account procedures; attorney previously received private reprimand for failure to keep adequate trust account records and promptly remit funds to clients); Fla. Bar v. Shanzer, 572 So.2d 1382, 1384 (Fla.1991) (disbarring attorney for five counts of trust account misappropriations, failure to comply with trust account recordkeeping requirements, and retaining interest on trust account funds for personal use; conduct occurred over nine-month period of time).
With limited exceptions, the Court has imposed lengthy rehabilitative suspensions when attorneys were grossly negligent in the management of trust accounts resulting in unintentional misappropriation of client funds. See Fla. Bar v. Wolf, 930 So.2d 574, 579 (Fla.2006) (imposing two-year suspension with one-year probation where attorney failed to follow proper trust account recordkeeping procedures and attorney’s employee mistakenly made deposits into his operating account instead of his trust account; when discovered, attorney covered the shortages in the account by remitting funds to the client); Fla. Bar v. Mason, 826 So.2d 985, 990 (Fla.2002) (imposing two-year suspension where although attorney intentionally transferred money from trust account to cover operating account shortages, Court found that attorney was not attempting to intentionally steal from her clients, and instead made mistakes in accounting practices and inadvertently transferred proceeds without proper documentation); Fla. Bar v. Whigham, 525 So.2d 873, 874 (Fla.1988) (three-year suspension for gross negligence in managing trust account resulting in shortages and overdrafts, where there was no willful misappropriation of client funds and no client suffered financial injury).
Very recently, however, the Court disbarred two attorneys who were grossly negligent in the management of their trust accounts, resulting in an employee embezzling over four million dollars. Fla. Bar v. Rousso, 117 So.3d 756 (Fla.2013). The attorneys in that case were also found to have improperly deposited funds from multiple sources, including a loan from a client, into the trust account to cover the shortages caused by the embezzlement, re- *40 suiting in commingling of funds, conflicts of interest, and dishonest conduct in that clients were misled as to the firm’s financial situation, and the attorneys took the loan from the client at a time when they knew it would be difficult, if not impossible, to repay the loan. Id. at 761-68.
In any event, regardless of whether we conclude that a lengthy suspension or disbarment is the appropriate sanction in case number SC11-1136, when considered together with Johnson’s contempt cases, disbarment is the overall appropriate sanction. The Court has consistently disbarred suspended attorneys who are found in contempt for violating this Court’s orders. See Fla. Bar v. Forrester, 916 So.2d 647, 654-55 (Fla.2005) (disbarring attorney for practicing law while suspended); Fla. Bar v. D’Ambrosio, 25 So.3d 1209, 1220 (Fla.2009) (disbarring suspended attorney who held himself out as eligible to practice law by sending letters on firm letterhead subsequent to suspension); Fla. Bar v. Lobasz, 64 So.3d 1167, 1173 (Fla.2011) (disbarring attorney for practicing law while suspended, even where attorney suffered from posttraumatic stress disorder, anxiety, and depression); Fla. Bar v. Greene, 589 So.2d 281, 283 (Fla.1991) (disbarring attorney for practicing law while suspended); Fla. Bar v. Simring, 612 So.2d 561, 571 (Fla.1993) (disbarring suspended attorney for using law firm’s stationery without any indication of his suspension and continuing to hold and disburse trust funds after effective date of suspension).
Accordingly, Clint Johnson is hereby disbarred from the practice of law in the State of Florida. Because Johnson is currently suspended, the disbarment will be effective immediately. Johnson shall fully comply with Rule Regulating the Florida Bar 3-5.1 (h). Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida, 32399-2300, for recovery of costs from Clint Johnson in case number SC11-1136 in the amount of $43,200.65, and in case numbers SC11-1578 and SC11-2343 (consolidated before the referee) in the amount of $18,542.44, for which sum let execution issue.
It is so ordered.
POLSTON, C.J., and PARIENTE, QUINCE, and LABARGA, JJ., concur.
LEWIS, J., concurs in result only.
CANADY, J., concurs in result.
PERRY, J., recused.

. The contempt proceedings were consolidated before the referee.

. Under former rule 3-5.2(e) of the Rules Regulating the Florida Bar, in effect at the time the petition for emergency suspension was filed, the Bar was required to file a formal complaint within sixty days after the emergency suspension order was issued.

. Johnson did not regularly maintain and retain all of the documents required for all of the trust accounts. As a result, Pearson was only able to audit the 4380 account and only able to express opinions regarding the deposits, withdrawals, and transfers concerning that account.

. Cintron testified that she had access and authorization to transfer funds electronically in and out of Johnson's accounts. She acknowledged that she began stealing from Johnson's operating account in 2009 and 2010 and that she concealed financial information and records from Johnson. She also testified that when she saw that money needed to be put into the trust account, she transferred funds to the trust account from various operating accounts and then when sufficient funds were available in the trust account, she would transfer the money back to the operating account. The evidence also showed instances where funds were disbursed to clients and medical providers and attorney fees were disbursed out of the trust account before the settlement check for that client had been deposited. The referee found that there was no evidence that Johnson knew of or participated in this.

. On June 15, 2011, the Bar and Johnson filed a “Stipulation by the Parties for the Appointment of a Receiver.” This stipulation asked the Court to appoint a receiver to complete an accounting and disburse funds from Johnson's trust accounts pertaining to his consumer debt clients during the period of his suspension. It further stated that the parties had stipulated to the appointment of Leslie W. Eiserman, C.P.A., to serve as the receiver. An order granting the stipulation and appointing the receiver was issued on July 14, 2011.

. Florida Standard for Imposing Lawyer Sanctions 4.12 (suspension is appropriate where lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to client) also supports at least a suspension.