# Supreme Court of Florida

_____

No. SC17-782
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**DENNIS L. HORTON,**
Respondent.

August 29, 2019

PER CURIAM.

We have for review a referee's report recommending that Respondent, Dennis L. Horton, be found guilty of professional misconduct and suspended from the practice of law for twenty-four months. We have jurisdiction. *See* art. V, § 15, Fla. Const. As discussed below, after having considered the referee's report, the record in this case, the parties' briefs, and oral argument, we approve the referee's findings of fact, recommendations as to guilt, and findings of aggravation and approve in part the findings in mitigation. But we conclude that one of the referee's findings in mitigation is unsupported by the record and disapprove of that

finding.  Last, we disapprove the referee's recommendation of suspension.
Instead, we disbar Horton for his misconduct.

BACKGROUND

On May 1, 2017, The Florida Bar (Bar) filed with the Court a Petition for Emergency Suspension alleging that Horton took improper loans from his clients, commingled trust funds in his operating account, and misused trust funds in violation of the following Rules Regulating the Florida Bar (Bar Rules):  4-1.8(a) (Business Transactions With or Acquiring Interest Adverse to Client); 4-1.8(b) (Using Information to Disadvantage of Client); 4-1.8(c) (Gifts to Lawyer or Lawyer's Family); 4-1.15 (Safekeeping Property); 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); 5-1.1(a)(1) (a lawyer must hold in trust, separate from the lawyer's own property, funds and property of clients); 5-1.1(b) (Application of Trust Funds or Property to Specific Purpose); 5-1.2(b) (Minimum Trust Accounting Records); and 5-1.2(d) (Minimum Trust Accounting Procedures).  The Court approved the Bar's Petition for Emergency Suspension and suspended Horton from the practice of law on May 3, 2017.  Horton filed a Motion to Dissolve or Modify Order of Emergency Suspension and an Emergency Motion for Relief and Clarification Regarding Order of Suspension and, following a hearing before a referee, the referee filed with the Court his report recommending that the order of emergency suspension,

dated May 3, 2017, not be dissolved or modified as to Horton, but that Horton's law partner be permitted to access the law firm's trust account. On June 16, 2017, we entered an order approving the interim Report of Referee and denying Horton's Motion to Dissolve or Modify Order of Emergency Suspension and granting his Emergency Motion for Relief and Clarification Regarding Order of Suspension with respect to permitting his law partner's access to the law firm's trust account.

REFEREE'S FINDINGS AND RECOMMENDATIONS

On December 1, 2017, the referee filed his final Report of Referee with the Court. In it, he made the following findings of fact in this case. Horton represented E.L., a seventy-four-year-old client, in drafting a revocable living trust and power of attorney. Horton admitted to drafting a fifth amendment to the living trust naming himself as a fifty percent beneficiary in the distribution, dated July 19, 2011. In September 2016 and October 2016, E.L. agreed to loan Horton a total of $90,000. Horton used the power of attorney issued to him by E.L. to issue three checks to himself from E.L.'s checking account in September and October 2016. On October 14, 2016, Horton wrote a fourth check to himself in the amount of $15,000 from E.L.'s checking account and attempted to deposit the funds into his personal checking account. E.L. disputed this fourth loan, and the check was returned for insufficient funds because E.L. had removed most of the funds from his checking account with a "Closing Debit." Horton admitted that he initially did

not provide a promissory note to E.L. to secure the loan nor did he advise E.L. to seek the advice of independent legal counsel regarding the transaction.

In a separate matter, Horton represented C.B., a seventy-five-year-old client. On or about August 30, 2016, pursuant to a durable power of attorney issued to him by C.B., Horton transferred $30,000 of the $32,066.34 balance in C.B.'s money market account to her checking account. The same day, Horton transferred $30,000 to a trust account for C.B. Following C.B.'s death on September 5, 2016, Horton transferred $17,500 of the $30,000 to his operating account by issuing a check. He noted in the memo of the check that one-half of the amount was for his attorney's fees and the other half was for his work or appointment as the personal representative of C.B.'s estate. Horton testified that he had not yet been appointed as personal representative by the probate court at the time he took this fee and that he was not appointed as personal representative of C.B.'s estate until two days later. Matthew Herdeker, Branch Auditor of The Florida Bar, conducted an audit of Horton's trust accounts for January 1, 2016, through December 31, 2016, and reviewed Horton's operating and personal checking accounts for the time period of July 1, 2013, through December 31, 2016. Herdeker testified that Horton used a portion of the $17,500 payment to cover an overdraft in his operating account, transferred part of the funds to his other business accounts and another personal account, and paid various operating expenses at his law firm. On October 19,

2016, Horton issued an additional check for $15,500 from C.B.'s estate account to himself for fees as personal representative. This was the same day that Horton's bank had dishonored the $15,000 check he issued from the account he held pursuant to a power of attorney granted to him by E.L. Horton testified under oath during his sworn statement on April 6, 2017, that "it wasn't a coincidence . . . . I needed that money, so I thought I would take my – take a portion of my personal representative's fee."

In a different matter, Horton represented R.O.C., an eighty-five-year-old client. Pursuant to the power of attorney prepared by Horton and granted to him by R.O.C., Horton changed the name and address on his client's accounts to reflect Horton's name and mailing address. Horton indicated that he made these changes at the request of R.O.C. Horton invoiced R.O.C. for legal services provided in 2014; however, he failed to invoice him for legal services provided in 2015 and 2016. In 2015, Horton issued thirty-four checks totaling $43,000 from R.O.C.'s accounts to either Horton's personal checking account or operating accounts. During this time period, Horton deposited funds back into R.O.C.'s checking accounts totaling $4800. One of those checks came from Horton's personal account shared with his wife. In 2016, Horton issued thirty-three checks totaling $82,840 from R.O.C.'s accounts to either his personal checking or operating accounts. During this same time period, Horton deposited funds back into

R.O.C.'s checking accounts totaling $40,050. After the Bar began its investigation, Horton issued a letter to R.O.C. informing him for the first time of Horton's compensation for 2015 and 2016 and attempting to explain his fees. However, he failed to disclose the total amount that he paid himself in 2015 and 2016 and the amounts that he returned to his client. In that letter, he also enclosed timesheets previously not sent to his client and offered to provide legal services to his client in 2017 for no charge. On or around February 12, 2016, R.O.C. signed a letter, prepared by Horton, authorizing Horton to liquidate and use monies for his client's care from a brokerage account. Between February 2016 and January 2017, the brokerage account statements were mailed to Horton's office address. From February 2016 through December 2016, Horton made sixteen transfers totaling more than $60,000 from the brokerage account to R.O.C.'s savings account. Horton testified that he made the transfers when his client ran short of money and used the funds to pay for his client's expenses. However, the referee identified three instances in which Horton transferred funds from R.O.C.'s brokerage account and used the funds for his own benefit. On February 17, 2016, Horton transferred $5000 from R.O.C.'s brokerage account to R.O.C.'s savings account. The next day, Horton transferred $5000 from the savings account to R.O.C.'s checking account. The same day, he transferred the $5000 from the checking account to his own operating account by issuing a check. Horton then used the funds to cover an

overdraft and pay overdraft charges in the operating account, the Internal Revenue Service, and Thomson Reuters. The referee further identified two other instances, in February 2016, and July 2016, in which Horton similarly transferred funds from R.O.C.'s brokerage account to his own accounts and used the funds for his own benefit.

Herdeker testified that after review of Horton's accounts, he determined that Horton repeatedly and significantly overdrew his operating account due to insufficient funds during 2015 and 2016. Herdeker also reported that the audit of Horton's trust account maintained at First Green Bank revealed that he failed to follow the minimum required trust accounting procedures in that he failed to identify the client matter on all trust account checks, failed to consistently identify the client matter and reasons for transactions in the journal, and failed to consistently identify reasons for transactions on the client ledgers.

Based on these findings, the referee recommended that Horton be found guilty of having violated the following Bar Rules: 4-1.8(a) (Business Transactions With or Acquiring Interest Adverse to Client); 4-1.8(b) (Using Information to Disadvantage of Client); 4-1.8(c) (Gifts to Lawyer or Lawyer's Family); 4-1.15 (Safekeeping Property); 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); 5-1.1(a)(1) (a lawyer must hold in trust, separate from the lawyer's own property, funds and property of clients); 5-

1.1(b) (Application of Trust Funds or Property to Specific Purpose); 5-1.2(b) (Minimum Trust Accounting Records); and 5-1.2(d) (Minimum Trust Accounting Procedures).

In determining the recommended sanction, the referee considered Horton's personal history, prior discipline, and the existence of aggravating and mitigating factors pursuant to the Florida Standards for Imposing Lawyer Sanctions (Standards). In aggravation, the referee found five factors: (1) a dishonest or selfish motive pursuant to Standard 9.22(b), because Horton's pattern of activity during the relevant time period was focused on addressing his immediate concerns of his own financial distress; (2) a pattern of misconduct pursuant to Standard 9.22(c); (3) multiple offenses pursuant to Standard 9.22(d); (4) vulnerability of victim pursuant to Standard 9.22(h), because the affected clients were elderly and fully reliant on Horton to act in their best interests; and (5) substantial experience in the practice of law pursuant to Standard 9.22(i). In mitigation, the referee found four factors: (1) absence of a prior disciplinary record pursuant to Standard 9.32(a); (2) timely good faith effort to make restitution or to rectify consequences of misconduct pursuant to Standard 9.32(d), because Horton repaid his client with interest; (3) character or reputation pursuant to Standard 9.32(g), because numerous individuals testified that Horton is a leader in the community, involved

in many charitable activities, and is well respected; and (4) remorse pursuant to Standard 9.32(*l*) because Horton appeared generally contrite at the final hearing.

Based on his findings of fact, recommendations as to guilt, and findings in aggravation and mitigation, the referee recommended that Horton be suspended for twenty-four months, effective, nunc pro tunc, May 3, 2017—the date of this Court's emergency suspension order. The referee also recommended that Horton pay the Bar's costs.[1] The Bar seeks review of the referee's recommended sanction and finding of remorse as a mitigating factor. Horton filed a cross-petition for review in which he seeks review of the referee's findings of fact on the issue of substantial compliance with trust account procedures, the recommended determination of rule violation of Bar Rule 4-8.4(c), and "any issue or motion not expressly ruled upon by the referee."

## ANALYSIS

First, Horton challenges the constitutionality of Rule Regulating the Florida Bar 3-5.2 governing emergency suspensions. We have considered Horton's challenge and find that he waived this claim by not litigating it when his emergency suspension was at issue before this Court.

---

1. We address the Bar's costs in a separate order.

Next, Horton asserts that the referee's findings of fact and recommendation of guilt as to Bar Rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) is not supported by the record. If a referee's findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. *Fla. Bar v. Gwynn*, 94 So. 3d 425, 428 (Fla. 2012); *see Fla. Bar v. Barrett*, 897 So. 2d 1269, 1275 (Fla. 2005). The referee's findings of fact must be sufficient under the applicable rules to support the recommendations as to guilt. *See Fla. Bar v. D'Ambrosio*, 25 So. 3d 1209, 1216 (Fla. 2009); *Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005). The party challenging the referee's findings of fact and recommendations as to guilt has the burden to demonstrate that the record is devoid of evidence supporting those findings or that the record evidence clearly contradicts the recommendations. *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007).

Horton argues that there was not proof that his conduct was knowingly fraudulent or dishonest and that the referee therefore erred in recommending guilt as to Bar Rule 4-8.4(c). We find that the record in this case clearly supports a finding that Horton deliberately or knowingly engaged in dishonest and deceitful conduct in violation of that rule. The referee found that Horton, through his own testimony, admitted to taking funds for fees from C.B.'s estate account as a

- 10 -

personal representative, knowing that he had not yet been formally appointed by the probate court. Horton does not assert that he acted inadvertently or negligently. To the contrary, Horton testified that he intentionally took these funds on September 6, 2016, because he was owed money for legal work that he had completed prior to C.B.'s death and because he thought that he would be appointed as personal representative that same day.

As it pertains to R.O.C., Horton paid himself fees in multiple amounts from August 2014 through November 2016. In 2014, Horton wrote himself thirteen checks from R.O.C.'s account totaling $13,700. That year, Horton invoiced R.O.C. for his legal fees. In 2015, Horton wrote himself thirty-four checks, totaling $43,000. However, he returned approximately $4800 to R.O.C.'s accounts. In 2016, Horton wrote himself thirty-three checks, totaling $82,840, and he returned approximately $40,050 to R.O.C.'s accounts. The referee determined that "[g]iven respondent's financial circumstances, the additional funds were taken to help minimize the monetary issues that he was facing." Regarding the $40,000 that Horton returned to R.O.C. in 2016, the referee determined that there "was no satisfactory rationale" to explain why Horton took these funds. Horton did not invoice R.O.C. for his legal services in 2015 and 2016. Although Horton eventually advised R.O.C. of the payments in writing, he only did so after the Bar began its investigation. And, in doing so, Horton inaccurately represented to his

client that he took $38,200 in 2015 and $39,760 in 2016 without further elaboration. Accordingly, we find that the record supports a finding that Horton deliberately transferred funds from R.O.C.'s account for his own personal benefit, knowing that he was not entitled to those funds.

Next, the Bar argues that the referee's finding of remorse as a mitigating factor is not supported by the record. "Like other factual findings, a referee's findings in mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record." *Fla. Bar v. Germain*, 957 So. 2d 613, 621 (Fla. 2007). As discussed herein, we disapprove as unsupported the referee's finding in mitigation that Horton demonstrated remorse pursuant to Standard 9.32(*l*).

This Court has long held that "To succeed in challenging a referee's findings of fact, the challenging party must establish there is a lack of evidence in the record to support such findings or that the record clearly contradicts the referee's conclusions." *Fla. Bar v. Glueck*, 985 So. 2d 1052, 1056 (Fla. 2008). A party "cannot meet [its] burden by simply pointing to contradictory evidence when there is also competent, substantial evidence in the record to support the referee's findings." *Id.*

In the instant case, we hold that the referee's finding of remorse is clearly erroneous and without support in the record. The record evidence demonstrates

that Horton testified at length about the harm to his reputation in the community and the effect these proceedings have had on his family. He accused the Bar of prosecuting him "as a trophy being hunted for the kill so [his] head could be mounted on their wall" and compared the proceedings to "facing a firing squad for a traffic violation." Further, Horton has continuously attempted to minimize his misconduct, asserting repeatedly that no client was harmed and no money was missing. We find no evidence in the record to indicate that Horton has expressed remorse for his misconduct or otherwise accepted responsibility for his actions.[2]

The Bar also challenges the referee's recommendation that Horton be suspended for twenty-four months, nunc pro tunc to the date of this Court's emergency suspension order. In reviewing a referee's recommended discipline, the Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. *See Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989); *see also* art. V, § 15, Fla. Const.

We disapprove of the referee's recommendation that Horton be suspended for twenty-four months. Considering the referee's recommendations regarding

---

2. During oral argument on March 7, 2019, Respondent's counsel was asked to direct the Court to evidence in the record to support the referee's finding of remorse. In response, Horton's counsel admitted that he was unable to identify any evidence in the record to support the referee's finding of remorse.

guilt that we approve, together with the referee's findings in aggravation and mitigation that we approve, we conclude that disbarment is the appropriate sanction.

The Court has long held that the misuse of client funds "is one of the most serious offenses a lawyer can commit." *Fla. Bar v. Schiller*, 537 So. 2d 992, 993 (Fla. 1989); *see also Fla. Bar v. Newman*, 513 So. 2d 656, 658 (Fla. 1987); *Fla. Bar v. Breed*, 378 So. 2d 783, 785 (Fla. 1979). The Court has held that disbarment is the presumptively appropriate sanction, under both the Standards and existing case law, when a lawyer intentionally misappropriates trust funds. *Fla. Bar v. Valentine-Miller*, 974 So. 2d 333, 338 (Fla. 2008); *Fla. Bar v. Brownstein*, 953 So. 2d 502, 511 (Fla. 2007); *see also Schiller*, 537 So. 2d at 993 ("Upon a finding of misuse or misappropriation, there is a presumption that disbarment is the appropriate punishment."); *Fla. Bar v. Pincket*, 398 So. 2d 802, 803 (Fla. 1981) ("We again reiterate that the misuse of clients' funds is one of the most serious offenses a lawyer can commit, and we will not be reluctant to disbar an attorney for this type of offense even where there is restitution.").

The Court has also recognized that the presumption of disbarment is especially weighty when the misconduct is intentional rather than negligent or inadvertent. *Fla. Bar v. Mirk*, 64 So. 3d 1180, 1185 (Fla. 2011); *see also Fla. Bar v. Tillman*, 682 So. 2d 542 (Fla. 1996) (disbarring attorney who engaged in a

- 14 -

pattern of intentional misuse of trust funds by paying personal expenses from the trust funds, drawing premature fees and costs, failing to pay client medical expenses with funds given to her to do so, commingling personal and client funds, and failing to follow rules for trust accounting). Indeed, the overwhelming majority of cases involving the misuse of trust funds have resulted in disbarment, regardless of mitigation. *See Fla. Bar v. Spear*, 887 So. 2d 1242, 1247 (Fla. 2004) (citing *Fla. Bar v. Massari*, 832 So. 2d 701, 706 (Fla. 2002)); *Fla. Bar v. Shanzer*, 572 So. 2d 1382, 1383 (Fla. 1991) (listing examples of cases in which the Court disbarred attorneys for misappropriation of funds notwithstanding the mitigating evidence presented in those cases).

In limited instances, the Court has allowed this presumption to be rebutted, but only by a showing of substantial mitigating circumstances that demonstrate the presumed sanction of disbarment would be unfair and inappropriate in a particular case. *See, e.g.*, *Fla. Bar v. McFall*, 863 So. 2d 303 (Fla. 2003) (imposing three-year suspension followed by a three-year probation for attorney who suffered impaired judgment due to medications and mental health).

Here, Horton has demonstrated a pattern of misconduct involving multiple clients over a period of approximately two years. The referee found that he acted intentionally and that his "pattern of activity during the relevant period of time [was] focused on his best interest, i.e. to address immediate concerns of his own

financial distress." The referee also found that all of the affected clients were elderly and had no support from family or friends. Horton's primary argument in favor of a lesser sanction appears to be that the Court should evaluate and sanction each finding of misconduct individually. However, these arguments are misguided. It is well established that the Court views cumulative misconduct more seriously than an isolated instance of misconduct. *See Fla. Bar v. Carlon*, 820 So. 2d 891, 899 (Fla. 2002). Thus, where there are several acts of misconduct being considered together, the sanction imposed is usually greater in the aggregate than the sum of the sanctions that might be imposed for any one of them individually. Horton's argument in favor of a lesser sanction also fails to consider that this " 'Court has moved toward imposing stronger sanctions for unethical and unprofessional conduct' to protect the legal profession from dishonor and disgrace." *Fla. Bar v. Dopazo*, 232 So. 3d 258, 263 (Fla. 2017) (quoting *Fla. Bar v. Rosenberg*, 169 So. 3d 1155, 1162 (Fla. 2015)).

Based on our approval of the referee's findings of fact, recommendations as to guilt, and findings in aggravation and mitigation, we disapprove the referee's recommendation that Horton be suspended for twenty-four months. In light of the seriousness of his misconduct, Respondent Dennis L. Horton is hereby disbarred. Because Horton is currently suspended, the disbarment is effective immediately. Horton shall fully comply with Rule Regulating the Florida Bar 3-5.1(h).

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, LAGOA, LUCK, and MUÑIZ, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Tallahassee, Florida, Carrie Constance Lee, Bar Counsel, Orlando, Florida, and Allison Carden Sackett, Staff Counsel, The Florida Bar, Tallahassee, Florida,

    for Complainant

Brett Alan Geer, The Geer Law Firm, L.C., Tampa, Florida,

    for Respondent