974 So.2d 333 (2008)
THE FLORIDA BAR, Complainant,
v.
Kristine W. VALENTINE-MILLER, Respondent.
No. SC06-1629.
Supreme Court of Florida.
January 10, 2008.
*334 John F. Harkness, Jr., Executive Director, and Kenneth Lawrence Marvin, Director of Lawyer Regulation, The Florida Bar, Tallahassee, FL, and Jan K. Wichrowski, Bar Counsel, The Florida Bar, Orlando, FL, for Complainant.
Barry Rigby of the Law Office of Barry Rigby, P.A., Orlando, FL, for Respondent.
PER CURIAM.
We have for review a referee's report recommending that respondent, Kristine W. Valentine-Miller, be found guilty of professional misconduct and be suspended from the practice of law for three years. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons expressed below, we approve the referee's findings of fact and recommendations as to guilt, but reject the referee's findings of mitigation and recommended discipline. The serious nature of respondent's misconduct, as well as the harm she caused, warrants disbarment.

FACTS
On June 19, 2006, based on the conduct at issue here, this Court suspended respondent on an emergency basis under Rule Regulating the Florida Bar 3-5.2. Fla, Bar v. Valentine-Miller, 934 So.2d 451 (Fla.2006). Subsequently, on October 3, 2006, The Florida Bar filed an amended complaint against respondent, alleging over twenty violations of the Rules Regulating the Florida Bar.[1] Respondent admitted *335 all the allegations made by the Bar. Following a formal hearing, the referee filed a report in which he made the following findings:
Respondent was admitted to the Bar in July 1997, and worked as an assistant public defender until 1999. For the next year, she was an associate in a personal injury firm which she left at the firm's request due to her "lack of organization." Respondent then shared space for a year with a group of attorneys who eventually asked her to leave and to "get a fresh start elsewhere" due to her problems with alcohol. Respondent shared space with another attorney from January 2001 to December 2005, at which time she returned to the Public Defender's Office.
Through 2004 and 2005, respondent neglected numerous clients by failing to diligently pursue their cases; failing to adequately communicate with them; failing to adequately account to them for trust funds when received; misrepresenting the status of clients' cases; failing to return client files when she abandoned her practice; and failing to utilize record-keeping and accounting procedures required by the Rules Regulating the Florida Bar.
Respondent's poor record-keeping and maintenance of files, many of which are missing, made it impossible to determine the exact total of client funds converted. The Bar's Chief Branch Auditor conducted an audit for the period from February 25, 2004, through February 28, 2006, and he *336 determined that the total owed clients was no less than $31,416.41 and no more than $51,291.41.
Respondent testified that she had a drinking problem as early as 2001, which affected her work performance, and that, at some point in time, she began abusing painkillers. Respondent's mother died in 2004 and shortly thereafter respondent was diagnosed with melanoma in her leg, a condition that respondent believed was terminal, which further increased respondent's reliance on alcohol and drugs. Her addictions increasingly affected her ability to represent her clients and to manage her office. Respondent checked herself into an inpatient rehabilitation facility six months after the Bar initiated the instant proceedings. Respondent demonstrated progress at the facility and started counseling new admissions.
The referee recommends that respondent be found guilty of the twenty-three rule violations charged and admitted.
The referee found the following aggravating factors: (1) pattern of misconduct; (2) multiple offenses; and (3) vulnerability of victim (specifically those clients who have not received settlement funds and who have not received files and records to enable them to find other counsel).
The referee found the following mitigating factors: (1) absence of prior disciplinary record; (2) absence of dishonest or selfish motive; (3) personal or emotional problems (those events in 2004 that contributed to substance addictions); (4) inexperience in the practice of law; (5) physical or mental impairment (the effects of her substance addictions); (6) interim rehabilitation; and (7) remorse.
The referee recommends that respondent be suspended for three years, nunc pro tunc as of June 19, 2006, the date of her emergency suspension, and thereafter suspended indefinitely until she has demonstrated rehabilitation with respect to her substance addictions, and until she has established that she has made all former clients whole. The referee recommends that, upon satisfaction of those conditions, respondent be placed on probation for three years with the condition that she not open or maintain a trust account until she has successfully completed The Florida Bar's Trust Accounting Workshop and Law Office Management Assistance Service or a similar course in office management and record-keeping procedures.
The Bar petitioned for review of the referee's recommended discipline, challenging the referees findings as to mitigation and aggravation and arguing that disbarment is the appropriate sanction.

ANALYSIS
As a preliminary matter, neither of the parties challenges the referee's findings of fact and recommendations as to guilt. Accordingly, we approve those findings and recommendations without further discussion.
The Bar challenges the referee's findings as to mitigation and aggravation. A referee's findings as to mitigation and aggravation carry a presumption of correctness and will not be disturbed unless clearly erroneous or without support in the record. Fla. Bar. v. Arcia, 848 So.2d 296 (Fla.2003).
The Bar challenges the referee's findings of interim rehabilitation, inexperience in the practice of law, and lack of a dishonest or selfish motive as mitigating factors.
The referee's finding of interim rehabilitation as a mitigating factor is supported by the record, which shows that respondent checked herself into an inpatient rehabilitation facility where she demonstrated progress. Accordingly, we approve the *337 referee's finding as to interim rehabilitation.
However, we reject the referee's findings as mitigation that respondent was inexperienced in the practice of law and that she lacked a selfish or dishonest motive. The referee found that respondent was inexperienced in the practice of law based on his belief that respondent's one-and-a-half years as an assistant public defender handling misdemeanor cases and then her short time as an associate provided minimal experience for a solo personal injury practice. The Bar argues that respondent did not merely make errors resulting from lack of experience. She stole money and abandoned her clients, and such misconduct cannot be mitigated by lack of experience.
Contrary to the referee's finding that "her limited experience as a public defender provided minimal trust accounting-experience," respondent practiced law for five years outside the Public Defender's Office and until the beginning of the Bar's audit period. In fact, respondent testified that she was somewhat familiar with the basic rules of trust accounting from working at a previous personal injury firm.
While the Court accords deference to a referee's finding of mitigation, it is clear that the referee's finding with regard to lack of experience is not supported by the record and lack of experience did not contribute to respondent's commission of the rule violations. Thus, we reject the referee's finding of mitigation as to inexperience in the practice of law.
The referee found that respondent lacked a dishonest or selfish motive because her conversions of her clients' funds were not willful misappropriations but were, rather, the result of gross negligence due to her alcohol addiction. The Bar argues that respondent admitted engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and, therefore, she knew that her actions were wrong and that she was dipping into client funds and failing to manage her accounts properly. Respondent urges us to approve this mitigating factor arguing that, in light of her mental condition and the state of her books and records, she did not commit a knowing misappropriation.
The referee recommends that the Court find respondent guilty of violating rule 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Respondent admitted she violated this rule. These facts cannot be reconciled with the referee's finding that respondent lacked a dishonest or selfish motive. See Fla. Bar v. Brownstein, 953 So.2d 502 (Fla.2007). Respondent intentionally misappropriated client money and, therefore, engaged in dishonest conduct. See Fla. Bar v. Riggs, 944 So.2d 167, 171 (Fla.2006) ("Knowingly or negligently engaging in sloppy bookkeeping amounts to intent under rule 4-8.4(c)."). Accordingly, we find the referee's finding that respondent lacked a dishonest or selfish motive to be unsupported by the record, and we reject it.
The Bar argues that the referee should have found as aggravating factors that respondent obstructed the disciplinary process by intentionally failing to cooperate with the Bar and failed to make restitution. We disagree with the Bar. The evidence in the record indicates that both of these factors were properly considered by the referee and rejected.
Next, the Bar challenges the referee's recommendation as to discipline. In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is our responsibility to order the appropriate *338 sanction. See. Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, 15, Fla. Const. However, generally speaking this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). In this case, we reject the referee's recommendation as to discipline and instead conclude that disbarment is the appropriate sanction.
The Bar argues the referee's recommendation of a three-year suspension is inadequate. Respondent argues that she is a fundamentally honest person who lost control of her life and her practice during a period of extreme personal crisis, so the recommended discipline should be approved.
While we sympathize with the problems respondent had in her personal life, and understand the problems associated with substance abuse and what it can do to a person's life, we cannot condone respondent's behavior. We have a responsibility to the citizens of this state. There is never a valid reason for taking client funds held in trust or for completely abandoning clients. Lawyers are required to have high ethical standards because members of the public are asked to trust lawyers in their greatest, hours of need. Without such standards, the entire legal profession would be in jeopardy as public trust would dissipate.
Disbarment is the presumptively appropriate sanction, under both the, Florida Standards for Imposing Lawyer Sanctions and existing caselaw, when a lawyer intentionally misappropriates trust funds. Brownstein, 953 So.2d at 510. Indeed, the overwhelming majority of cases involving the misuse of trust funds have resulted in disbarment, Fla. Bar v. Spear, 887 So.2d 1242, 1247 (Fla.2004), regardless of mitigation. Fla. Bar v. Shanzer, 572 So.2d 1382 (Fla.1991). In limited instances, we have allowed this presumption to be rebutted, but only by showing substantial mitigating circumstances that demonstrate the presumed sanction of disbarment would be unfair and inappropriate in a particular case. See, e.g., Fla. Bar v. McFall, 863 So.2d 303 (Fla.2003); Fla. Bar v. Tauler, 775 So.2d 944 (Fla.2000).
Respondent was aware that she owed her clients money, due to the numerous phone calls she received from her clients asking her for their money. However, respondent received settlements, took her fee, and then refused to give her clients their share. Respondent should have recognized her own failings and her downward spiral from 2004 through 2006 and taken measures to correct matters before the Bar had to step in.
Although the referee found mitigating factors of substance abuse, personal problems, and rehabilitation, these factors do not overcome the presumption of disbarment here. Respondent intentionally misappropriated client funds and abandoned her entire practice. This Court has disbarred attorneys who misappropriated funds or abandoned their clients, despite the referees findings of substance abuse and rehabilitation, concluding that the mitigation was insufficient to overcome the seriousness of the misconduct. See Fla. Bar v. Prevatt, 609 So.2d 37 (Fla.1992) (disbarring attorney for use of client's funds as attorney's own and failure to repay the funds for over ten years despite evidence of alcoholism); Fla. Bar v. Shuminer, 567 So.2d 430 (Fla.1990) (disbarring attorney for misappropriation of funds where addiction and other mitigating factors failed to outweigh seriousness of misappropriations); Fla. Bar v. Golub, 550 So.2d 455 (Fla.1989) (disbarring attorney *339 for misappropriating client funds despite mitigating evidence of alcoholism, which helped to explain the respondent's conduct, but did not excuse it); Fla. Bar v. Rodriguez, 489 So.2d 726 (Fla.1986) (disbarring attorney for the conversion of client funds and admitted commingling of clients' moneys, despite mitigating evidence relating to alcoholism and rehabilitation); Fla. Bar v. Setien, 530 So.2d 298 (Fla.1988) (disbarring attorney for repeatedly ignoring his clients and neglecting their interests). The attorneys in these cases either misappropriated funds or abandoned their clients. Respondent did both.

CONCLUSION
We approve the referee's findings of fact and recommendations as to guilt. However, we disapprove two findings pertaining to the mitigating factors, and disapprove the recommended discipline. We find that the mitigation remaining in this case does not outweigh the seriousness of the offenses; disbarment is the appropriate sanction.
Accordingly, respondent is hereby disbarred, effective nunc pro tunc, June 19, 2006, the effective date of her emergency suspension. Because respondent is currently suspended, it is unnecessary to provide her with thirty days to close out her practice of law to protect the interests of existing clients.[2]
It is so ordered.
LEWIS, C.J., and WELLS, PARIENTE, QUINCE, and BELL, JJ., concur.
ANSTEAD, J., concurs in part and dissent in part with an opinion, in which CANTERO, J., concurs.
ANSTEAD, J., concurring in part and dissenting in part.
I would approve the referee's report and recommendation for discipline in full. Further, because they are supported by competent substantial evidence, I would approve the factual findings of the referee, and especially the concluding summary of the report where the referee explains his findings and recommended discipline based thereon:
Upon consideration of all the evidence presented by both parties, the referee finds that respondent's culpability was diminished due to the events beginning in early 2004, particularly her substance addictions. See The Florida Bar v. Tauler, 775 So.2d 944 (Fla.2000) at 947; and McFall, supra, at 308. The referee also finds that respondent's conversion of client funds was not willful. See, e.g., The Florida Bar v. Whigham, 525 So.2d 873 (Fla.1988). Her conduct was negligent rather than intentional. See The Florida Bar v. Broome, 932 So.2d 1036 (Fla.2006). Compare The Florida Bar v. McIver, 606 So.2d 1159 (Fla.1992); The Florida Bar v. Spears, 786 So.2d 516 (Fla.2001); and The Florida Bar v. Barley, 831 So.2d 163 (Fla.2003). Standard 4.12 is applicable.
The referee finds Broome to be more on point with respondent's conduct and situation than other cases cited or reviewed. However, given the degree of harm suffered by respondent's clients, the referee is recommending that she be *340 suspended for three years, commencing from the date (19 June 2006) of her emergency suspension. It is recommended that thereafter, she be suspended indefinitely until she has demonstrated rehabilitation with respect to her substance addictions, and until she has established that she has made all former clients whole. As to the continuing substance abuse treatment under contract with Florida Lawyers Assistance, Inc., it is recommended that she be evaluated for "dual diagnosis" treatment, defined as treatment of patients who have both mental health disorders and substance use disorder. It is recommended that, upon satisfaction of those conditions, she be placed on probation for three years with the condition that she not open or maintain a trust account until she has successfully completed The Florida Bar's Trust Accounting Workshop and LOMAS or a similar course in office management and record keeping procedures.
The majority's decision to overturn the referee's critical factual determination that the respondent's conduct was "negligent rather than intentional" clearly violates this' Court's case law consistently holding that we are bound by a referee's findings of fact just as we would be bound by a jury's factual determinations. This principle is especially important in disciplinary proceedings where the Bar must prove its case by clear and convincing evidence.
CANTERO, J., concurs.
NOTES
[1] The Florida Bar's amended complaint, filed on October 3, 2006, alleged respondent violated Rules Regulating the Florida Bar 4-1.1 (failing to provide competent representation to a client); 4-1.2 (failing to abide by a client's decisions concerning the objectives of representation); 4-1.3 (failing to act with reasonable diligence and promptness in representing a client); 4-1.4 (failing to keep a client reasonably informed about the status of the matter and promptly, complying with reasonable requests for information); 4-1A (entering into an agreement for, charging, or collecting an illegal, prohibited, or clearly excessive fee); 4-1.5(0(5) (failing to prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm in the event of a recovery);. 4-1.15 (failing to comply with The Florida Bar's rules regulating trust accounts); 4-1.16(d) (failing to take steps to the extent reasonably practicable to protect a client's interest upon termination of representation); 4-5.3 (failing to make reasonable efforts to ensure that the conduct of a non-lawyer, over whom a lawyer has direct supervisory authority, is compatible with the professional obligations of the lawyer); 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 4-8.4(g)(1) (failing to respond, in writing, to any official inquiry by bar counsel within 15 days of the date of the initial written investigative inquiry by bar counsel); 4-8.4(g)(2) (failing to respond, in writing, to any official inquiry by bar counsel within ten days of the date of any follow-up written investigation inquiries by bar counsel); 5-1.1 (failing to comply with trust accounting requirements); 5-1.1(a)(1) (failing to hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with representation); 5-1.1(b) (failing to hold in trust and applying only to that purpose, money or other property entrusted to an attorney for a specific purpose, including advance for fees, costs, and expenses); 5-1.1(e) (failing to promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, failing to promptly render a full accounting regarding such property); 5-1.1(f) (failing to withdraw the lawyer's fee from the trust account within a reasonable time after it becomes due); 5-1.2 (failing to maintain trust accounting records and follow trust accounting procedures); 5-1.2(b)(2) (failing to maintain original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book, clearly identifying: (A) the date and source of all trust funds received; and (B) the client or matter for which the funds were received); 5-1.2(b)(5) (failing to maintain a separate cash receipts and disbursements, journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least: (A) the identification of the client or matter for which the funds were received, disbursed, or transferred; (B) the date on which all trust funds were received, disbursed, or transferred; (C) the check number for all disbursements; and (D) the reason for which all trust funds were received, disbursed, or transferred); 5-1.2(b)(6) (failing to maintain a separate file or ledger with an individual card or page for each client or matter, showing all individual receipts, disbursements, or transfers and any unexpended balance, and containing: (A) the identification of the client or matter for which the funds were received, disbursed, or transferred; (B) the date on which all trust funds were received, disbursed, or transferred; (C) the check number for all disbursements; and (D) the reason for which all trust funds were received, disbursed, or transferred); 5-1.2(b)(7) (failing to maintain all bank or savings and loan association statements for all trust accounts; and 5-1.2(c)(1) (failing to cause to be made monthly: (A) reconciliations of all bank or savings and loan association trust accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and any other items necessary to reconcile the balance per bank with the balance per the checkbook and the cash receipts and disbursements journal; and (B) a comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the two totals and reasons therefor).
[2] The referee did not specifically resolve the issue of costs in his report. If the parties agree on costs, they shall file a stipulation with the Court within thirty days of the date of this opinion. If the parties do not agree, we remand the case to the referee on the issue of costs. On remand, either party may move for a hearing before the referee. The referee shall file a supplemental report, making findings as to costs, which will be considered by this Court.