PARIENTE, J.,
concurring in part and dissenting in part.
I would approve the referee’s recommendation of a three-year suspension, as urged by The Florida Bar and agreed to by the respondent. Since respondent’s drug crimes, which occurred over six years ago, he has led a drug-free and exemplary existence. Although respondent pled guilty to the serious offense of drug trafficking, the overwhelming evidence in this case demonstrates that his misconduct stemmed from a severe addiction to drugs, did not arise from the practice of law, and resulted in no client harm.
There are other strong mitigating factors in this case that, when coupled with respondent’s addiction, weigh heavily in favor of a three-year suspension rather than disbarment. For example, when charged with this crime, respondent immediately assumed responsibility for his actions. This factor was critical to the determination by the State Attorney’s Office during plea negotiations that a sentence of six months of house arrest and six months of jail on the weekends was appropriate— far below the mandatory minimum requirement for the first-degree felony drug trafficking charge. The assistant state attorney testified that the mandatory minimum requirement was reduced in respondent’s case because “it didn’t seem ... like he was a street trafficker. He accepted responsibility. He went into rehab immediately. He was drug tested routinely and was always negative.”
Further, since the time of his own arrest and plea agreement, respondent has lived an exemplary existence as found by the referee:
While his acceptance of responsibility and cooperation with the investigation and legal process is commendable, his resolve to turn his life around is impressive. Since the time of his arrest, nearly five and 1/2 years ago, Mr. Liberman has remained drug free (clean date is April 7, 2004). Over the past 3 1/2 years he has been a productive member of society working, continuing to contribute to the legal industry as a paralegal. He has also been a benefit to the community, initially volunteering as a tutor at Camillus House and now supervising the tutoring program and volunteering as a member of the Board of the Camillus House Young Leaders.
When determining the appropriate sanction, this Court should also consider the mitigating fact that respondent’s crime, while serious, did not arise from the practice of law and resulted in no client harm. For example, this case stands in marked contrast to cases in which we have dis *41 barred attorneys whose substance abuse and addiction contributed to misappropriation of funds or abandonment of clients. See Fla. Bar v. Valentine-Miller, 974 So.2d 333, 338 (Fla.2008) (“This Court has disbarred attorneys who misappropriated funds or abandoned their clients, despite the referees findings of substance abuse and rehabilitation, concluding that the mitigation was insufficient to overcome the seriousness of the misconduct”) (citing Fla. Bar v. Prevatt, 609 So.2d 37 (Fla.1992); Fla. Bar v. Shuminer, 567 So.2d 430 (Fla.1990); Fla. Bar v. Golub, 550 So.2d 455 (Fla.1989); Fla. Bar v. Rodriguez, 489 So.2d 726 (Fla.1986); Fla. Bar v. Setien, 530 So.2d 298 (Fla.1988)). In this case, there is no evidence of any client harm or any indication that respondent’s addiction or crime impacted his performance as an attorney.
The majority distinguishes this case from Florida Bar v. Rosen, 495 So.2d 180 (Fla.1986), but in fact the circumstances are very similar. Like the attorney in Rosen, at the time of his arrest, respondent was heavily addicted to and impaired by drugs, specifically crystal methamphetamine. In Rosen, we explained:
The referee’s findings of fact, we believe, well support the recommendation of suspension rather than disbarment. First, the referee found that “[t]he respondent’s involvement in the crime for which he pleaded guilty was a result of his own addiction to cocaine at the time,” and that “respondent’s addiction was the prime force behind his felony conviction.”
495 So.2d at 181. Similarly, in this case, respondent’s addiction directly contributed to his conduct. As found by the referee when comparing the instant case to Rosen, “[Respondent also slid into deep and mind altering addiction and it was the addiction that caused the actions that led to his arrest.”
I understand that respondent pled guilty to a drug trafficking crime. However, when looking at the actual substance of the charges for this crime, which occurred over six years ago, it is not comparable to the trafficking crimes at issue in Hecker and Wilson, which are relied on by the majority. In Hecker, the attorney pled guilty to criminal conspiracy to traffic in 1000 pounds of cannabis. 475 So.2d at 1241. Here, respondent’s crime involved 270 Ecstasy pills, totaling 37.7 grams. In Wilson, the attorney pressured one of his clients who was incarcerated in jail to make arrangements to have one and a half pounds of cocaine delivered to the attorney. 425 So.2d at 2. In this case, respondent’s drug trafficking crime resulted from the request of a fellow addict and friend, who was working undercover after having been arrested.
I also emphasize that, even if we were to accept the recommendation of a three-year suspension, this would not be a guarantee of reinstatement. Demonstrating rehabilitation is a very heavy burden to meet, especially in cases with the added concern of addiction.
Finally, to the extent the majority attempts to lessen the severity of the sanction of disbarment by finding that the mitigation is sufficient to justify making the order of disbarment effective, nunc pro tunc, to the date respondent was automatically suspended, I note that when this Court suspends an attorney, the suspension is usually effective, nunc pro tunc, to the date of original suspension.
In light of the foregoing, and because it has been over six years since the offense and respondent has lived an exemplary and drug-free existence for those six years, I would accept the referee’s strong recommendation, joined by The Florida *42 Bar, that we approve the three-year suspension.
QUINCE, J., concurs.