# Supreme Court of Florida

No. SC2023-0518

**THE FLORIDA BAR,**
Complainant,

vs.

**MALIK LEIGH,**
Respondent.

March 13, 2025
**<u>CORRECTED OPINION</u>**

PER CURIAM.

The Florida Bar seeks review of a referee's report recommending that Respondent, Malik Leigh, be found guilty of professional misconduct in violation of the Rules Regulating The Florida Bar and suspended for 91 days.[1] The Bar challenges the entirety of the report, arguing that the referee's factual findings are insufficient and that the referee either dismissed or overlooked significant acts of misconduct that support Leigh's disbarment. For

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

the reasons discussed below, we find Leigh guilty of all 24 rule violations charged in the Bar's complaint and disbar him from the practice of law in Florida.

## BACKGROUND

The Bar filed a six-count complaint against Leigh after receiving multiple judicial referrals from the presiding judges in the cases Leigh initiated. Counts I and II pertain to Leigh's conduct while engaged in litigation involving three related cases in the United States District Court for the Southern District of Florida against several named defendants including the Palm Beach County School District (collectively the "School Board litigation"). During the litigation, Leigh made a number of threatening social media posts directed at the opposing parties in the cases, which raised significant security concerns about those involved in the litigation and necessitated the entry of a protective order by the federal court. Leigh also made false accusations about opposing counsel, accusing her in court filings of committing forgery and other offenses without any factual basis for doing so.

In Counts III through VI, Leigh was charged with committing multiple rule violations stemming from his attempt to initiate a

toxic tort class action case on behalf of the residents of Stonybrook Apartments in the Circuit Court for the Fifteenth Judicial Circuit. Leigh repeatedly failed to file a viable complaint in the case, despite filing numerous amended pleadings over a two-year period. He also failed to comply with numerous court orders, and he used a court reporter to question an employee of a party that he knew was represented by counsel. And when the case was eventually appealed to the Fourth District Court of Appeal, Leigh falsely accused the presiding circuit court judge in the case of racial bias.

## ANALYSIS

### A. Findings of Fact and Recommendations of Guilt

The Bar challenges the referee's factual findings, arguing they are vague and deficient, and recommendations as to guilt, arguing that Leigh should be found guilty of 24 violations of the Rules Regulating The Florida Bar. "To the extent that the Bar challenges the referee's findings of fact, this Court's review of such matters is limited, and if a referee's findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the

referee." *Fla. Bar v. Alters*, 260 So. 3d 72, 79 (Fla. 2018) (citing *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000)).

Also, to the extent the Bar challenges the referee's recommendations as to guilt, "the referee's factual findings must be sufficient under the applicable rules to support the recommendations." *Fla. Bar v. Bander*, 361 So. 3d 808, 814 (Fla. 2023) (quoting *Fla. Bar v. Patterson*, 257 So. 3d 56, 61 (Fla. 2018)). As the party challenging the referee's findings of fact and recommendations as to guilt, the Bar has the burden to demonstrate that there is no evidence in the record supporting, or clearly contradicting, the recommendations. *Id.* (citing *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007)).

We first note that the referee's report is deficient as the referee failed to make detailed, factual findings for every count. However, upon our review of the record, we find that the evidence in the record clearly supports finding Leigh guilty of all 24 charged rule violations. We discuss our reasons below.

### Count I

During the School Board litigation, Leigh published humiliating, disparaging, and threatening social media posts

- 4 -

directed at those involved in the case, which the federal district court found to have delayed and interfered with the discovery process. Leigh also posted other violent, morbid messages around the same time, although not related to the litigation. These posts included a photo of himself with the text: "After this round if [sic] depos in the next 2 weeks, would love to start a shooting campaign." He also posted a picture of a tommy gun being fired by a movie character from *The Mask* with the message: "Me the next time im [sic] in front of the #Liverpool back line!! YOU GUYS SUCK!!! 4years now! Get it together!" Another post stated: "I can't hate the US and it's [sic] people more right now. Just need a mass extinction event right now!"

When defense counsel learned of the social media posts, he abruptly suspended an ongoing deposition and filed a motion to reschedule the remaining depositions and for a protective order from the court. The court granted protective relief and ordered the presence of an armed police officer for the remaining depositions. Leigh was sanctioned and ordered to pay the defendants' attorneys' fees for filing and litigating the motion to suspend and reschedule the depositions and for the protective order. Leigh was also

suspended from the United States District Court for the Southern District of Florida for two years.

Based on this conduct, we find Leigh guilty of violating rules 4-3.6(a) ("A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding due to its creation of an imminent and substantial detrimental effect on that proceeding."), 4-8.4(a) ("A lawyer shall not violate or attempt to violate the Rules of Professional Conduct . . . ."), and 4-8.4(d) ("A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis . . . .").

## Count II

Leigh and opposing counsel, Lisa Kohring, were required to submit a joint pretrial stipulation. Leigh and Kohring were working together on the joint stipulation and on the afternoon the

stipulation was due, they exchanged several drafts of the document. Ultimately, Leigh replied to Kohring's last e-mail copying Kohring's paralegal, attaching a copy of a pretrial stipulation with his signature affixed and stating in the body of the e-mail: "Pretrial Stipulation to sign and file." Leigh did not explain in the e-mail that he had made additional changes to the draft stipulation or note that he had signed the document. Shortly after receipt and without reviewing Leigh's attachment, the paralegal filed a pretrial stipulation that was not the version e-mailed by Leigh, and which contained an electronic signature purportedly by Leigh's law partner, Danielle Watson, who was not involved in the drafting of the stipulation but was copied on the e-mail exchanges.[2]

After Leigh realized the stipulation that was filed was different from the version he had e-mailed, he contacted Watson and learned that she had not authorized the filed stipulation. Because it was after normal business hours and Leigh knew Kohring had left the office for the day, Leigh filed his own version of the stipulation in an

---

2. Watson's related misconduct was also referred to the Bar. *See Fla. Bar v. Watson,* No. SC2023-0416 (Fla. Mar. 13, 2025).

addendum with Watson's name in the signature block, expressly accusing Kohring of forging Watson's electronic signature. This filing, which was styled as a "Joint PreTrial Stipulation Addendum" contained the following statement:

> [T]he Joint Pre-trial Stipulation [DE 71] by the Defendant's Counsel, Lisa Kohring, not only filed the wrong Pre-trial Stipulation, but she forged Plaintiff Counsel, Danielle Watson's electronic signature and filed it. The Actual "agreed" or "joint" stipulation which was submitted with Attorney, Malik Leigh, Esq's endorsement and submitted to Defense counsel [f]or filing is attached herein without Defense Counsel's Signature. Counsel will follow up with an official Motion regarding this action.

The next morning, Kohring reviewed the pretrial stipulation and addendum and requested by e-mail that Watson and Leigh retract their statements in the addendum. Leigh and Watson ignored Kohring's e-mails and calls. After receiving no response, Kohring again e-mailed Watson and Leigh, stating that she had tried calling twice and warning that she may seek sanctions. Leigh replied to Kohring's e-mail, claiming that Kohring "forged" Watson's signature and could be subject to sanctions or criminal penalties based on her office affixing Watson's signature to the stipulation without authorization.

Kohring and Leigh each filed a motion for sanctions. Ultimately, the judge denied Leigh's motion but granted Kohring's, finding that Leigh and Watson acted in bad faith and holding them jointly responsible for the defendants' attorneys' fees.

Leigh's conduct resulted in additional proceedings, a court finding that he acted in bad faith, and sanctions. We, thus, find that the record clearly supports a finding that Leigh is guilty of violating rules 4-8.4(a) ("A lawyer shall not violate or attempt to violate the Rules of Professional Conduct . . . .") and 4-8.4(d) ("A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis . . . .").

### Count III

In the Stonybrook case, Leigh attempted to initiate a proceeding and obtain immediate injunctive relief by filing a "Plaintiffs' Ex Parte Emergency Motion for Preliminary Injunction." Leigh claimed the residents of Stonybrook Apartments were living in inhumane and unsafe housing conditions. The circuit court denied

the motion because it did "not allege matters entitled to be heard on an emergency or expedited basis." Nevertheless, Leigh filed a notice of hearing, setting the motion, which had already been denied, for a half-day hearing.

A short time later, Leigh filed an amended motion seeking the same relief. The court again denied the motion because it was procedurally deficient. The court advised Leigh to cure the deficiencies in his filing within 10 days, serve all defendants, and then seek non-emergency, non-ex parte relief in the ordinary course of business.

Counsel for Defendants Millennia Housing Management, Ltd., LLC and Stonybrook FL, LLC filed a limited appearance and response to Leigh's amended motion and sought to cancel the half-day hearing Leigh set for the motion that had already been denied. Defendant City of Riviera Beach also filed a limited appearance and motion to quash the improper service of the first motion and strike the notice of hearing and the purportedly issued subpoena to the City's Building Official to appear at the hearing. The court cancelled the hearing.

Despite notice that a motion was not the proper vehicle to bring a claim, Leigh filed a "**Corrected** Plaintiffs' Motion for Preliminary Injunction." This third motion contained the same allegations as his first two motions and sought the same emergency relief. Stonybrook filed a motion for sanctions because Leigh filed three motions improperly requesting injunctive relief that contained identical allegations despite the court's rulings. At a hearing on Stonybrook's motion, the court deferred ruling on the motion, pending the filing of a complaint stating a valid claim, and informed Leigh that his motions failed to satisfy certain pleading requirements. The court also granted Riviera Beach's motion to quash because of Leigh's failure to follow Florida Rule of Civil Procedure 1.070 (Process).

Finally, Leigh filed a "Class Action Complaint with Accompanying Request for Class Representation and Demand for Jury Trial (corrected)." Stonybrook filed a motion to dismiss and strike redundant and immaterial portions of the complaint, arguing that Leigh improperly named the defendant as "Stonybrook FL, LLC (aka Millennia Housing Management/Millennia Companies)," when Stonybrook and Millennia are two separate entities. Furthermore,

the counts were commingled against numerous defendants, making it impossible for Stonybrook to frame its defenses, and Leigh failed to meet the threshold of the class certification requirements under Florida Rule of Civil Procedure 1.220 (Class Actions) or the requirements for entitlement to a preliminary injunction. Riviera Beach also filed a motion to dismiss the class action complaint, arguing that it was immune from suit under sovereign immunity. The court held a hearing on Stonybrook's motion and struck several words and phrases from Leigh's complaint as scandalous, immaterial, or impertinent.

Thereafter, Leigh filed an amended class action complaint, which despite the court's earlier ruling, contained many of the same words and phrases that the court had struck from his initial complaint. Riviera Beach and Millennia filed motions to dismiss Leigh's amended complaint, and Defendants GMF-Stonybrook, L.L.C. and GMF-Preservation of Affordability Corp. (referred to collectively as "GMF") filed a motion for involuntary dismissal with prejudice. The motion listed Leigh's violations of the court's orders and claimed that the amended complaint had not been served and was so deficient that responding properly would be nearly

impossible because it commingled claims against the several defendants and failed to comply with Florida Rule of Civil Procedure 1.130 (Attaching Copy of Cause of Action and Exhibits). Additionally, GMF attached to its motion copies of social media posts targeting the defendants in the case that were made by Leigh and his law firm's social media account, which included references to " 'Concentration Camp-like' conditions" and allegations that the property was run by "organized crime syndicates."

At a hearing on GMF's motion for involuntary dismissal, the court declined to dismiss the case with prejudice after considering the impact that it would have on the plaintiffs. However, the court ordered Leigh to secure a mentor to assist him in the case and certify that the amended complaint complied with the court's previous orders and that it was well-founded and accurately stated the law. The court also ordered Leigh to take a two-hour professionalism and civility course and imposed a gag order on the parties and attorneys, precluding public discussion of the case and ordering existing social media posts be removed. Thereafter, Leigh filed a second amended complaint, but the filing violated the court's orders because it contained the same language that the court had

- 13 -

previously stricken and failed to contain the court-ordered certification from an approved mentor.

GMF, Stonybrook, Millennia, and Riviera Beach all filed motions to dismiss the second amended complaint and a joint motion for sanctions against Leigh for his failure to comply with the court's orders. The court granted Riviera Beach's motion to dismiss on sovereign immunity grounds and granted Stonybrook's, Millennia's, and GMF's motions to dismiss without prejudice. The court held Leigh in contempt for failing to comply with the court's orders, finding that Leigh

> admitted that he has failed to comply with the Court's 57.105 Order and the Court's Sanctions Order by: (a) failing to pay the sanctions when due; (b) failing to attend a professionalism class as ordered; (c) failing to obtain a proper mentor and have that mentor certify all substantive pleadings (including the Second Amended Complaint) and significant motions (specifically, Plaintiffs' motion to disqualify the Court); (d) failing to comply with the Court's orders striking certain inflammatory language; (e) failing to comply with the rules of pleading to state a viable cause of action, and (f) failing to comply with the Gag Order by, inter alia: (i) failing to remove references to Defendants and this pending litigation from his website and social media accounts; and (j) posting to his social media account about this pending litigation after the imposition of the Gag Order.

The court disqualified Leigh from representing any interest of the putative class members and ordered him to pay the reasonable costs and attorneys' fees the defendants incurred in connection with the show cause hearing. The court gave Leigh an opportunity to purge his contempt of court orders, but he failed to do so.

Nevertheless, Leigh filed a third amended complaint. This complaint still contained the same language the court previously struck, was uncertified by a mentor, and contained many of the same deficiencies as the prior complaints. The court found that the third amended complaint violated the court's prior orders and dismissed the complaint without prejudice but without further leave to amend to bring claims by multiple plaintiffs, instead requiring each plaintiff to bring his or her claim individually by commencing new actions. The court ordered Leigh and his law firm jointly and severally liable for the defendants' attorneys' fees totaling $39,989.90.

Ultimately, Leigh was grossly incompetent in trying to initiate the class action lawsuit on behalf of the Stonybrook residents. He repeatedly attempted to bring an action by filing a motion for injunctive relief, even after the court denied the motion as improper.

He was also held in contempt for violating numerous court orders and despite the court providing Leigh an opportunity to purge his contempt, he failed to do so. He made several social media posts related to the Stonybrook case, even after the court imposed a gag order to avoid tainting the jury pool. Leigh's conduct covered two years of litigation, during which he was unable to file a complaint that stated a viable claim, resulting in the dismissal of his clients' complaint. His conduct caused costly litigation, and Leigh was sanctioned for payment of the defendants' attorneys' fees.

Thus, we find that the record clearly supports a finding that Leigh is guilty of violating rules 4-1.1 ("A lawyer must provide competent representation to a client."), 4-3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ."), 4-3.4(c) ("A lawyer must not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]"), 4-3.6(a) ("A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should

- 16 -

know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding due to its creation of an imminent and substantial detrimental effect on that proceeding."), 4-8.4(a) ("A lawyer shall not violate or attempt to violate the Rules of Professional Conduct . . . ."), and 4-8.4(d) ("A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis . . . .").

## Count IV

When Leigh filed the first amended complaint in the Stonybrook case, he received notice that e-service delivery had failed. He sent an e-mail to opposing counsel, acknowledging the error and attaching the complaint but not including any exhibits, which is required for proper service. *See* Fla. R. Civ. P. 1.130(b); 1.070(e). Nevertheless, he filed a motion for default, claiming the complaint was served. In denying Leigh's motion for default, the court specifically found that "there was no legal support for Plaintiffs' Motion for Default either factually or by an application of

- 17 -

then-existing law to the facts presented." Additionally, as to Leigh's complaint against the City of Riviera Beach, the court awarded sanctions against Leigh and found that "counsel knew or should have known that the claims stated in the Complaints against the City were not supported by the application of then-existing law to the material facts alleged in the Complaints." The court awarded Riviera Beach $16,150.00 in attorney's fees to be paid by Leigh and his law firm, jointly and severally.

Therefore, we find that the record clearly supports a finding that Leigh is guilty of violating rules 4-1.1 ("A lawyer must provide competent representation to a client."), 4-3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ."), 4-3.4(c) ("A lawyer must not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]"), 4-8.4(a) ("A lawyer shall not violate or attempt to violate the Rules of Professional Conduct . . . ."), and 4-8.4(d) ("A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly,

or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis . . . .").

Count V

During the Stonybrook litigation, Leigh contacted Carol Baer, a court reporter, to take the sworn statement of Mayra Lugaro, assistant manager of Millennia, a party represented by counsel. Leigh sent Baer a list of questions to ask Lugaro. Leigh explained to Baer that as an opposing party, he could not be present for the sworn statement and could not talk to Lugaro. Baer took the sworn statement at Lugaro's home and asked Lugaro Leigh's questions. Leigh traveled to Lugaro's residence and waited outside while the sworn statement was being taken. During the sworn statement, Leigh texted Baer about obtaining internal confidential company documents from Lugaro.

Leigh used the information obtained from the sworn statements and documents to support allegations in his third amended complaint. He also attempted to disqualify defense counsel and have the court impose sanctions on Stonybrook, Millennia, and GMF based on allegations that they were retaliating

against his clients. Based on this conduct, the court disqualified Leigh from representing any clients in the litigation or in any other matter against the defendants relating to the Stonybrook Apartments complex.

Based on this conduct, we find Leigh guilty of violating rules 3-4.3 ("The commission by a lawyer of any act that is unlawful or contrary to honesty and justice may constitute a cause for discipline . . . ."), 4-4.2(a) ("In representing a client, a lawyer must not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer . . . ."), 4-4.4(a) ("In representing a client, a lawyer may not . . . knowingly use methods of obtaining evidence that violate the legal rights of such a person."), 4-8.4(a) ("A lawyer shall not violate or attempt to violate the Rules of Professional Conduct . . . ."), and 4-8.4(d) ("A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis . . . .").

## Count VI

Leigh appealed the circuit court's order holding him in contempt and sanctioning him to the Fourth District Court of Appeal. In the initial brief, Leigh challenged the sanctions imposed against him by labeling these actions as "the trial court's repeated acts of bias and disregard for neutrality in various hearings and positions." Leigh asserted that the adverse rulings entered against him were based on his race rather than for any substantive purpose, stating:

> Third, Plaintiffs' Counsel was accused of violating the Florida Bar, in various areas: communication, candor, and competency. These were not based upon any substantive purpose other than they occurred after a witness (white) accused Plaintiffs' Counsel (Black) of being aggressive with her and calling her a pejorative; one who's [sic] very corroborative witnesses stated was not truthful. . . .
>
> . . . .
>
> Sixth, whether the Court can bypass the Class Certification process set forth in F.R.C.P. 1.220 in retaliation of the Plaintiffs finding zero confidence in the trial court judge's ability to adjudicate fairly and without bias (implicit racial bias or any other exhibited) in a way that seeks to destroy both the Plaintiffs' credibility, the credibility of their arguments, and Plaintiffs' Counsel's credibility.

- 21 -

Furthermore, Leigh directly charged:

> What the Plaintiffs in the trial case; Appellants in the instant, are sure of is that the judicial system literally took one look at them and denied them a fair opportunity to be heard. That it all started typically enough: a white woman accused a large scary black man of something he did not do, and there were witnesses to support his side. But those witnesses all looked like him, and those on the other side all looked their way; and in the end, regardless of what was presented to the contrary, this is also what the Court saw.

Leigh made numerous assertions that the trial judge engaged in repeated acts of racial bias, but he failed to establish that he had an objectively reasonable factual basis for making the statements. Although Leigh claimed that adverse rulings entered against him were based on his race rather than for any substantive purpose, the record reflects that Leigh was sanctioned for violating numerous court orders and filing a frivolous complaint against the City, and the complaint against the remaining defendants was ultimately dismissed because despite numerous opportunities to amend the complaint, Leigh was not able to plead a viable cause of action.

Based on this conduct, we find Leigh guilty of violating rule 4-8.2(a) ("A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity

concerning the qualifications or integrity of a judge . . . .").  *See Fla. Bar v. Jacobs*, 370 So. 3d 876, 883 (Fla. 2023) (explaining that the Court uses "an objective test, asking if the lawyer had 'an objectively reasonable factual basis for making the statements' " (quoting *Fla. Bar v. Ray*, 797 So. 2d 556, 559 (Fla. 2001))).  We also find that Leigh is guilty of violating rules 4-8.4(a) ("A lawyer shall not violate or attempt to violate the Rules of Professional Conduct . . . .") and 4-8.4(d) ("A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis . . . .").

## B. Discipline

We disapprove the referee's recommended sanction of a 91-day suspension.  Considering the multitude of offenses and egregious nature of Leigh's conduct, we find disbarment is the appropriate sanction.  Leigh exhibited gross incompetence and has demonstrated that he lacks the ability to grasp the most basic, fundamental legal concepts.  In failing to follow court orders and

rules, he has displayed contempt for the courts, the parties involved, and the legal system as a whole. Moreover, his repeated actions indicate an unwillingness to learn from his mistakes. We hold that such flagrant misconduct signifies a significant character flaw and merits a severe sanction.

"Prior to making a recommendation as to discipline, referees must consider the Standards for Imposing Lawyer Sanctions, which are subject to aggravating and mitigating circumstances, and this Court's existing case law." *Fla. Bar v. Strems*, 357 So. 3d 77, 90 (Fla. 2022). Our review of a referee's recommended discipline "is broader than that afforded to the referee's findings of fact because, ultimately, it is [our] responsibility to order the appropriate sanction." *Patterson*, 257 So. 3d at 64 (citing *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989); art. V, § 15, Fla. Const.).

<u>Standards</u>

In looking at the Standards, we find support for disbarment as the presumptive sanction in this case. *See* Fla. Stds. for Imposing Law Sancs. 4.5(a) ("Disbarment is appropriate when a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures

and causes injury or potential injury to a client."); 6.2(a) ("Disbarment is appropriate when a lawyer causes serious or potentially serious interference with a legal proceeding or knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another and causes serious injury or potentially serious injury to a party."); 7.1(a) ("Disbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another and causes serious or potentially serious injury to a client, the public, or the legal system.").

Aggravating and Mitigating Factors

As to aggravation, the referee found three factors under Standard 3.2(b): (1) pattern of misconduct; (2) multiple violations; and (3) indifference to making restitution. The Bar claims that the referee erred in failing to find three additional aggravating factors: dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. We find error only in the referee's failure to find a dishonest or selfish motive as an aggravating factor.

"[A] referee's findings of mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record." *Germain*, 957 So. 2d at 621 (citing *Fla. Bar v. Arcia*, 848 So. 2d 296, 299 (Fla. 2003)). The referee declined to find a dishonest or selfish motive in aggravation because Leigh was providing legal services on a pro bono basis. But Leigh violated several rules involving dishonesty, and his use of a court reporter to ask an employee of an opposing party questions that he was expressly prohibited by rule from asking himself was entirely dishonest. Thus, we find dishonest or selfish motive as an aggravating factor.

As to mitigation, the referee found nine factors under Standard 3.3(b): (1) absence of a disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) cooperative attitude towards the proceedings; (5) inexperience in the practice of law; (6) character or reputation; (7) unreasonable delay in the disciplinary process; (8) interim rehabilitation; and (9) remorse. We find error in five of these findings.

First, because we have found that the referee erred in not finding a dishonest or selfish motive in aggravation, we

correspondingly disapprove the referee's finding in mitigation of absence of a dishonest or selfish motive.

Next, the Bar challenges the referee's findings that Leigh's personal or emotional problems are mitigating factors. Notably, the Bar does not contest the underlying facts related to Leigh's personal and emotional problems. Instead, the Bar argues that the problems were related to his childhood and young adulthood and unrelated to the events that transpired in this case. We agree. In *Florida Bar v. Schwartz*, 382 So. 3d 600, 612 (Fla. 2024), we found that the mitigating factor did "not apply because at issue is a life-long personality characteristic as opposed to an acute emotional impairment." Similarly, the referee in this case even emphasized that these events in Leigh's life shaped his character, and she did not find that his actions were caused by an acute impairment. Therefore, we hold that the referee's finding of this mitigating factor is clearly erroneous.

The Bar challenges the referee's finding as a mitigating factor that Leigh was inexperienced in the practice of law. This finding is inconsistent with the referee's analysis of aggravating factors. However, in examining her justification for finding this mitigator,

she appears to be referring to Leigh's inexperience in a specific area of litigation. We recently explained that "the substantial experience factor is not parsed by expertise in specific areas of the law, but instead applies to experience related to the capability of determining whether conduct is violative of the rules." *Bander*, 361 So. 3d at 817. Accordingly, we hold that the referee's finding of this mitigating factor is clearly erroneous.

Additionally, the Bar challenges the referee's finding of unreasonable delay as a mitigating factor. To find this mitigating factor, it requires not only that there has been a delay, but also that the respondent demonstrate "specific prejudice resulting from that delay." Here, the referee found no prejudice, stating that "no witness was unavailable due to the delay." Accordingly, we reject as clearly erroneous the referee's finding of unreasonable delay as a mitigating factor.

The Bar also argues that the referee's finding of interim rehabilitation is unsupported by the record. In finding this factor, the referee cited the uncontroverted testimony that Leigh has practiced ethically since 2020. However, at the time of the hearing, Leigh still had not complied with court orders to take

professionalism and ethics courses. When asked if he had done anything to help with his mental health or obtain additional education, he gave vague, evasive answers. Also, at the time of the hearing, Leigh had not paid the monetary sanctions imposed against him and his firm. Therefore, we hold the referee's finding of this mitigating factor is clearly erroneous. *Cf. Fla. Bar v. Irish*, 48 So. 3d 767, 774 (Fla. 2010) (holding that referee's rejection of interim rehabilitation as a mitigating factor was supported when respondent spoke to a doctor for a couple hours but did nothing more); *Fla. Bar v. Valentine-Miller*, 974 So. 2d 333, 336-37 (Fla. 2008) (holding that referee's finding of interim rehabilitation was supported when respondent checked herself into an inpatient rehabilitation facility).

Case Law

Finally, in determining the appropriate sanction, we look to prior cases for guidance. In *Florida Bar v. Springer*, 873 So. 2d 317 (Fla. 2004), we held that disbarment was warranted where the respondent engaged in multiple instances of misconduct in six matters, which collectively demonstrated a pattern of failing to

provide competent representation, failing to act with reasonable diligence, and misrepresenting the status of the client's matter.

In *Florida Bar v. Committe,* 136 So. 3d 1111 (Fla. 2014), we imposed a three-year suspension on a respondent who filed a frivolous tort action and failed to pay the monetary sanction imposed for the frivolous lawsuit. Then, after receiving two letters requesting payment be rendered, "Committe wrote to the United States Attorney, accusing the defendant of attempting to extort money from him and requesting that she be criminally prosecuted." *Id.* at 1113.

Considering the totality of Leigh's actions and the resulting number of rule violations, we conclude that the case law supports disbarment. We acknowledge that cases where we imposed a lengthy rehabilitative suspension, such as *Committe,* are similar but note that the misconduct at issue in those cases does not rise to the level of Leigh's misconduct in this case. Leigh's misconduct is more comparable to the misconduct that occurred in *Springer,* where, like here, there was a lengthy pattern of misconduct and gross incompetence. We find that the magnitude of Leigh's misconduct

signifies a larger issue with Leigh that cannot be remedied by a rehabilitative suspension.

While Leigh has no prior disciplinary record and we typically approach discipline incrementally, we have disbarred attorneys with no prior history when the violations are egregious enough. *See Strems*, 357 So. 3d 77. Here, Leigh's conduct demonstrates a failure to grasp the most fundamental legal doctrines or procedures, and despite numerous warnings, he has demonstrated a propensity to flout court rules and orders. Leigh's refusal to follow multiple court orders demonstrates that he is not amenable to learning or rehabilitation. Further, at the time of the hearing before the referee, Leigh had not yet paid the sanctions, demonstrating a lack of respect for the court's authority in imposing the sanctions and a disregard for the parties to whom the sanctions are owed.

We conclude, based on a review of relevant case law, the Standards, and the aggravating and mitigating factors found by the referee, that disbarment is the appropriate sanction in this case.

## CONCLUSION

Accordingly, Malik Leigh is disbarred from the practice of law in Florida. Leigh's disbarment is effective 30 days from the date of

this opinion so that Leigh can close out his practice and protect the interests of existing clients. If Leigh notifies this Court in writing that he is no longer practicing and does not need the 30 days to protect existing clients, we will enter an order making his disbarment effective immediately. Leigh must not accept any new business from the date of this opinion, and he is prohibited from engaging in any acts constituting the practice of law in Florida once his disbarment becomes effective.

Leigh must fully comply with Rules Regulating The Florida Bar 3-5.1(h) and, if applicable, 3-6.1.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Malik Leigh in the amount of $3,594.42, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Patricia Ann Toro Savitz, Staff Counsel, Mark Lugo Mason, Bar Counsel, The Florida Bar, Tallahassee, Florida,

for Complainant

Juan Carlos Arias of Law Office of Juan Carlos Arias, Esq., Fort Lauderdale, Florida,

for Respondent